The opinion of the court was delivered by
Nicholls, O. J.
Dr. Henry De Mahy, “ suing for himself and for his-wife, Cecilia De Mahy, and also in his capacity as father of his minor child, Tullía De Mahy, and for the separate use, benefit and advantage of his said minor child,” represents in the petition which he filed in this case that on or about the 3d of June, 1892, petitioner’s wife with her child Tullia, a little girl then aged two years and eleven months, at St. Martinsville, in the parish of St. Martin, took passage on, and with the said child got on the regular passenger train of the branch railroad of the Morgan Louisiana & Texas Railroad and Steamship Company, running to Cade, a regular station on the main road or track of said company in the parish of St. Martin; that the fare from St. Martinsville to said station at Cade was paid. That the motive, or purpose, or business the said Mrs. De Mahy had to take passage on said train of said branch road and go to said Cade station was to meet and receive there her sister, whom she expected, knowing that she was coming from New Orleans on that day on the regular passenger train of said railroad company to Cade station, there to take the train of the aforesaid branch road of said company and come back with her to St. Martinsville, where the said sister was coming on a visit to petitioner’s family. That the defendant is a corporation created by the General Assembly of the State of Louisiana, and that the branch road from St. Martinsville to the station at Cade, where it makes connection with the main line or *1332 track of the railroad of said company, belongs also to said company, and was then and is still under its control, and was then and is now run and managed by employés and officers in the service of the defendant company, and that the said company is liable and responsible for all damages resulting or growing out of any act of negligence, mismanagement of said officers and comployés or any one of them, just as much so as if said damages would result or grow out of any omission on the part of said company to do or perform any thing or act deemed necessary in law for the protection of the life and person of its passengers, and of those having business with it.
That on said 3d day of June, 1892, the said train from St. Martins-ville arrived at Cade station more than one hour before the train coming from New Orleans reached said station; that on the train and in the same coach or car in which petitioner’s wife and child were, there were also several ladies and several young children; that usually the train of said branch road running from St. Martinsville to Cade station, which is a mixed passenger and freight train, arrives there one hour before either the passenger train coming from New Orleans and going west or the train coming from Texas and going east gets at Cade station; that consequently passengers who come from St. Martinsville to said station to take one or the other of said trains or to meet and receive expected friends at said station have to wait there during a considerable time, sometimes more than one hour, and that in the meantime said passengers are told and permitted to remain in the car or coach in which they have come, for the .reason that said company has grossly and wantonly neglected to build a station house and waiting room for the accommodation of the passengers and other persons while waiting at said station the arrival of expected trains. That although it has been several years since the defendant company has established a regular station at Cade on the main line or track of the said road, where the train of their branch road, coming from said St. Martinsville, has been making connection with its main line, bringing passengers there daily, said company has grossly and wantonly neglected to build a station house or waiting room for the accommodation and safety of its lady and children passengers who have to be detained at said station awaiting the arrival of expected trains.
That on the said 3d day of June, the car or coach in which petitioner’s wife and child and the other ladies and children were, when *1333 it reached Cade station was placed on a side track or switch alongside the main track or line of said railroad and was left there to await the arrival of the passenger train coming from New Orleans and going west; that to this car or coach there was a baggage, express or smoking car attached and coupled; that after having placed the car or coach in which petitioner’s wife and child were, and the one attached and coupled to it, both were left on said side track and the locomotive was detached from said cars and taken on the main line or track, switching during a considerable time displacing and replacing freight cars; that having been thus left in said car or coach on said side track or switch, petitioner’s wife, as well as all the other ladies in the said cars, felt in a state of perfect security and safety, as much as if they had been standing in their own house; that after having been in said coach on said side track nearly one hour the children became more or less restless and commenced moving about, and petitioner’s wife, tired of remaining sitting so long, got up, and whilst standing and watching her said child, all at once the locomotive, without having been seen by petitioner’s wife and the other ladies on the said coach, got off the main track where it had been switching and was brought from behind on the said side track or switch, shoving before it two freight ears, and that in coupling said freight cars to the baggage, or express, or smoking cars to which the coach in which petitioner’s wife and child were, struck it with great force and violence, thereby shoving and pushing it with equal force and violence against the coach or car in which petitioner’s wife and child were, thereby producing and causing a violent and sudden jolt and concussion by which petitioner’s little girl Tullia, who was then standing very near to her mother, was thrown off the said coach or car; that there was neither notice or warning given of any kind of the approach of said locomotive with said freight cars on said side track or switch for the purpose of coupling as aforesaid, and that at and about that moment there was no officer or employé of said company in or about the coach in which petitioner’s wife and child were; that when petitioner’s child was thrown off said car or coach in the manner above stated, she fell between the coach or car in which she was and the express, or baggage, or smoking car thereto attached and under the latter, and that seeing her child thus precipitated under a moving car or train the mother, frantic with fear and grief at the sight of the imminent danger to which her child was *1334 exposed and moved by that motherly love which is stronger than the feeling or sentiment of self-preservation, she spontaneously sprang from the coach where she was to the assistance of her child, whom she found under the moving car or train with its head lying on or across the rail and about to be crushed by the wheels of said car, and that upon seeing which she ran her right hand and arm under said car and shoved the child further under, thereby saving the life of her child, but as the train did not stop and kept moving along her said arm was caught under the wheels and the-flesh was lacerated, the bone was broken and crushed into pieces, causing most excruciating pains and suffering; that the said child Tullía was then and there badly hurt, that she received on her right arm several very painful wounds which have left large cicatrices or sears and which have caused the bone of the forearm to be bent and disfigured; that said injuries and wounds have caused great pain and suffering to said child, for which the defendant corporation is responsible to her.
That ever since said occurrence petitioner’s wife has been confined to her bed, suffering from her wounds and bruises, needing constant medical assistance and nursing; that the injury to her right arm is permanent, and that she will never again be able to use it to do and perform any household duties, and not even to render to her young children those services which a mother owes them; that besides the injuries she has received as aforesaid on her body, and the great physical pains she suffered in consequence of the same, she has undergone and endured horrible and dreadful mental pains and sufferings, such as no one but a" mother can feel, when she saw her said child precipitated and thrown from the coach under a moving train, with its head . lying on or ■ across the rails, exposed at a second to be crushed to death. Petitioner further represented and charged; that the personal injuries to his wife and • child as aforesaid, as well as the physical pains resulting therefrom, and the mental pains and-sufferings undergone- and endured by his wife, have been caused principally by the culpable, gross and wanton neglect of the defend- - ant not to- have built at their station- at Oade a station house or waiting room for the reception and accommodation of its passengers ■ and other persons having business with it, and who have to wait there g, considerable time for the- arrival- of the expected train; and also, by the negligence of-the officers and the emyloyés of said ;com *1335 pany then in charge of said train to not have given proper and timely notice and warning to the persons left in the coach on the side track or switch of the coming and approach of the locomotive with its freight train for the purpose of coupling, as stated and set forth.
That his wife is about 30 years old; that in consequence of the personal actual injuries she has received as aforesaid she has ever since been most of her time confined to her bed, unable to do and perform work of any kind, or even bo superintend the household, and that her condition has been such and is such as to require medical attention and treatment and nursing daily, all of which has caused loss of time to petitioner, who is a practising physician, and considerable expenditure of money.
Petitioner avers and charges that by the fault and gross, wanton and culpable neglect of said company not to have built at Oade station a station house and a waiting room for the reception and accommodation and safety of its passengers and of other persons having business with it, and by the fault and negligence of the officers and employés in charge of the train in the manner set forth, petitioner’s wife has suffered damages in the sum of $20,000, for which the defendant is liable and responsible; that in like manner by the fault and the gross, wanton and culpable negligence of defendant, and by the fault and negligence of its officers and employés, as set forth, his child Tullía has suffered damages in the sum of $5000 for the bodily injuries received by her and the great physical pains and sufferings caused by the same, and that in his capacity of father and natural guardian of his said child he is entitled to a judgment against defendant for said amount for the separate benefit and use of his said child.
Petitioner further averred that in consequence of the injuries to his said wife and child he has suffered actual damages in expenses incurred for medical treatment and nursing of his said wife and child and in time lost in the further sum of .$1000, for which said corporation is liable and for which he is entitled to a judgment; that under the circumstances and facts of this ease, in justice, equity and' law, as well as in the interest of and for the protection of the public; the said company is amenable and liable to punitive and, exemplary damages. • • ■ , ! ' •
That, on the 3d day of June, 1892, Ben.-Durand was in the femploy *1336 of the said defendant company as conductor in charge of the train on the branch road running from St. Martinsville to Cade station, and that he is still conductor thereof, having been retained in his same position by the defendant company; that between petitioner and the said Durand there has always existed friendly relations; that the said Durand, as conductor aforesaid, early on the morning of June 4, 1892, or about that date, availing himself of those friendly relations and friendly ties, and in a whining and begging way, with tears in his eyes, exhibiting great distress and expressing great fears of losing his position, which could only be averted by complying with his request, and in order to take undue advantage of petitioner, the said Durand informed petitioner, who was not present when his wife and child were injured, that the injury to petitioner’s wife and child was purely accidental and unavoidable and was not occasioned by or through the fault or negligence of any of the employés in charge of said train, and requested, nay, insisted, that petitioner write a letter to W. F. Owen, superintendent of the defendant company, exonerating the officials in charge of said train, said letter to be transmitted by said Durand, with his report in the case, to said Owen. That when the said Durand made those statements petitioner was ignorant of the true facts of the case and petitioner had been continuously for about twelve or fourteen hours at the bedside of his wife, who was then in a very critical condition and suffering excruciating pain, besides his great anxiety for his said child, who also demanded his attention, and that petitioner was under great mental strain and anxiety consequent upon the serious injury and great sufferings of his wife and child and their then critical condition, and that while under this great mental strain and anxiety and being in full ignorance of the true facts of the case, and believing that the said Durand had not misrepresented the facts to him, petitioner did write the letter, as requested and insisted upon by Durand; that petitioner wrote said letter under a misapprehension of the facts superinduced by the false representations of Durand, who purposely and designedly misinformed petitioner and misled him as to the real facts of the case and the true situation of affairs, and that if said misrepresentations had not been made to petitioner by Durand, who was the conductor in charge of said train and in the employ of the defendant company, petitioner would not have written said letter, which was obtained from him through *1337 the false and fraudulent misrepresentations made by the conductor of said train and in the employ of the defendant company, and who petitioner had every reason to believe was fully cognizant of all the facts of the case, and who petitioner had no reason to believe would purposely and fraudulently attempt to deprive him of his rights to obtain redress for his injuries, and by one who petitioner had no reason then to mistrust. That amicable demand for redress and payment for damages for said injuries to his wife and child had been made and that the same had been refused.
In view of the premises, petitioner prayed that the defendant be cited and that after due proceedings petitioner have and recover judgment against the said company for $20,000 damages for bodily injuries and pains and suffering of his wife as alleged; and for the further sum of $1000 damages for expenses incurred for medical treatment and nursing of his said wife and child, and for loss of time and expenditures as alleged; and that in his capacity of father and natural guardian of his minor child, Tullia De Mahy, he have judgment against the defendant, and it be condemned to pay for the separate benefit and use of the said minor child the sum of $5000.
Defendant filed an exception to the effect that the plaintiff had cumulated entirely distinct and separate actions in one suit; that he, as representing his wife, sued for $25,000 damages, and as representing his child, sued in her behalf for $5000 damages; and further, that he had mingled the charges of medical attendance and loss of time of himself, for which he asked judgment for himself for $1000, in this cumulated action, thereby doubly cumulating the suit, wherefore he prayed that the same be dismissed. Upon the filing of this exception, plaintiff moved “to amend his petition and to discontinue the portion demanding damages for injuries done to and suffered by his child Tullia, and for expenses incurred for medical' attendance to said child, and for loss of time in attending to her, and to limit and restrict his action and suit against the defendant to petitioner’s demand in damages for the injuries done to and suffered by his wife, and for expenses incurred for medical attendance of his said wife as alleged in the petition.” This amendment having been allowed and made, petitioner prayed for judgment against defendant. The defendant filed an answer and a supplemental answer. In the answer it pleaded the general issue, and further answering said “that the accident which is alleged to have occasioned the injuries to plaintiff’s *1338 wife, for whom he sues in this action, was’occasioned solely through the negligence, imprudence and want of ordinary care on the part of his said wife.” In the supplemental answer defendant said “that plaintiff alleges negligence in the manner and. form as set forth in the petition. That if respondent was guilty of any negligence in the premises, the same was not the proximate cause of the accident complained of, but that said accident had for its proximate cause the negligence and imprudence of plaintiff’s wife.”
The case having been tried before a jury, a verdict was returned in favor of the plaintiff for $20,000 damages, and a judgment having been rendered against defendant in conformity thereto, the latter appealed.
Plaintiff having declared in his amended petition “ that he restricted his action against defendant to his demand in damages for the injury done to and suffered by his wife, and for expenses incurred for medical attendance to-his wife as alleged in the petition,” the issues before us for determination are those which result from the pleadings and prayer, as so narrowed and as affected by those raised by defendant's answers.
Plantiff’s demand is grounded upon the following averments:
.Petitioner further represents that the personal injuries to his wife, as well as the physical pains resulting therefrom, and the mental pains and sufferings undergone and endured by his wife, have been caused principally by the culpable, gross and wanton neglect of the Morgan Louisiana & Texas Railroad and Steamship Company not to have built at their station, at Cade, a station house or waiting ro,om for the reception and accommodation and safety of its passengers and other persons having business with said company, and who have to wait there a considerable time for the arrival of expected trains, and also by the negligence of the officers and employes of said company then in charge of said trains to not have given proper and timely notice and warning to the persons left on the coach, in the aforesaid side-track or switch,. of the coming and approach of the locomotive with its freight train for the purpose of coupling, as stated and set forth.
•Defendant meets this demand by, firstly, a general denial.of plain-, tiff’s- allegations; .secondly, by asserting that-the -accident which; isialleged to have occasioned the injuries to plaintiff’s wife;- was oc *1339 casioned solely through the negligence and imprudence and want óf ordinary care on the part of his wife; and, thirdly, by a claim that if it was guilty of any negligence in the premises, the same was not the proximate cause of the accident complained of, but that said accident had for its proximate cause the negligence and imprudence' of plaintiff’s wife.
It will be observed that although the plaintiff, in his recital of the facts connected with the accident, alleges that whilst his wife and children and other ladies and children were occupying the coach on the branch train, awaitingthe arrival of that from New Orleans, the children became more or less restless and moving about, and petitioner’s wife tired of sitting so long got up, and while standing and watching her child all at once the locomotive, without having been seen by her and the other ladies on the said coach, got off the main track where it had been switching and was brought from behind, on the said side-track or switch, shoving before it two freight ears, and that in coupling the said freight cars to the baggage, or express, or smoking ears to the coach in which the ladies and children were, struck it with great force and violence, thereby shoving and pushing with equal force and violence against the coach in which they were, thereby producing and causing a violent and sudden jerk and concussion, “by which his little girl Tullia, who was then standing near to her mother, was thrown off the said coach,” he nowhere ' charges that the coupling as made on that day was as to time,. place or manner either unusual, unnecessary, improper or negligent.'
The negligence relative to the coupling of which plaintiff complains is not as to its violence, but is declared to be the failure on' the part of the officers and employés of -the road to give notice that it was about to be made.
In designating the negligence which is made the basis of the' action, that relating to the failure to construct the station house is charged as culpable, gross and wanton, whilst that’relative to the failure to give notice.is characterized simply as -negligence'without those adjectives attached.
We do not think - that under the pleadings the character of the coupling is strictly an issue.- " ' '
It may be well to say, however, that there is nothing in the record' which-would lead us: to the conclusion that the-coupling upon the' *1340 day in question was materially different from that upon other days, or that it was made with unnecessary force or shock.
The defendant company owns and operates a branch road from Oade station to the town of St. Martins. The branch was constructed about 1882. There is a freight depot at Oade, but no station house or waiting room for passengers. The custom seems to have been for passengers going to St. Martins, or coming from that place, to take or to retain seats in the passenger coach of the branch train, which usually arrived at Oade before the regular train, and there awaited its arrival. On the 3d of June, 1892, Mrs. De Mahy and her two children, one six years and the other two years and ten months old, took passage at St. Martins for Oade, where she expected to meet her sister coming from New Orleans. She was accompanied by several friends. There were a number of other ladies and children and some men upon the train as passengers. When the train reached Oade it was side-tracked, the locomotive detached and used for some time in switching freight cars which were to be and were afterward attached to it.
When the coupling was made of the locomotive and these freight cars to the coaches which had been side-tracked there resulted a very considerable jolt, which caused the smaller child of Mrs. De Mahy, who was standing on the platform of the passenger car, to be thrown down and to fall between the opening of that coach and that of a baggage or express car which was next to it. The mother, who was standing in the coach near the door, immediately ran out jumped upon the ground, and thrust her arm under the still moving cars to reach and protect the child. In so doing her arm was caught and badly broken by one of the wheels. That she was very seriously injured and suffered great pain is beyond question. In all probability she will never regain fully, if at all, the use of the arm between the elbow and the shoulder.
On the day after the accident Dr. De Mahy, the husband Of the injured lady, wrote as follows to the superintendent of the defendant:
St. Martinsville, La., June 4, 1892.
Dear Sir — Dr. Duperrier told me that you had made inquiry about the accident to my wife and child. Let it be distinctly understood that the railroad company is in no way to blame for it. *1341 Mr. B. L. Durand, I must say, one of your best officials, has no reproach to receive from anybody, and I formally exonerate him from the least censure.
Hoping this will be favorably received, I am
Yours respectfully,
Henry De Mahy, M. D.
Dr. Duperrier, the gentleman referred to in this letter, says in his testimony that he was called as a physician to the residence of Dr. De Mahy the evening of the accident, on which occasion he asked him the question: How did the accident to your wife occur? to which he answered, “I can not blame the Railroad Company, nor any of the officials of the same for the accident.”
Notwithstanding this declaration and letter this suit was instituted, plaintiff assigning as reasons for bringing it those which we have copied from the pleadings. During the trial defendant offered, but was not permitted, to prove that at the moment of the accident Mrs. De Mahy herself declared that she blamed no one but herself for the accident, and that no fault was attributable to defendant. Th declarations as part of res gestee should have been admitted.
Plaintiff claims that the accident was caused by the fault and gross, wanton and culpable negligence of the defendant in not having built a station house and waiting room for the accommodation of passengers at Oade.
We are not called on to say in this case whether defendant was or was not undár a legal duty and obligation to have built a station house, for upon the assumption that such was its duty, the failure to have done so was not the proximate cause of the injury. The case must turn upon other facts.
We have said that at the moment of the coupling the child was standing upon the platform of the passenger coach. The only witness of the plaintiff who testifies upon that subject expressly states tip at such was the case, and this is supported by a number of witnesses for the defence.
The evidence shows that the little girl had gone several times upon the platform and been brought back, and the imprudence of her being in such a position, independently of any question of coupling, was both manifest and recognized. Had she not been in this particular place she would have received no harm.
*1342 . We can not hold otherwise than that it was negligence in . the mother to have permitted a child of that tender age to have been where she was. That fact was the direct contributing cause of the falling.
This suit is not for damages for injury done to the child, but for those received by the mother, and for injuries by the mother not as the direct and immediate result of the coupling upon herself, but as the result of her going out after the jolt had taken place and she had received no personal harm therefrom and placing her arm under the car in her effort to guard and save her child. Plaintiff’s counsel contend that in doing so she was'not only not to blame, but that she showed the greatest heroism and greatest devotion. In this he is certainly correct, for the mother’s conduct both at the time and afterward was such as to command the highest admiration, but counsel is mistaken in thinking that the contributory negligence which defendant charges was in that act. What he charges as contributory negligence was the failure of the mother to have kept the child inside of the coach and to have allowed her to go upon the platform. It is most deplorable that she should have lost sight of her, but for the consequences upon herself of having done so she can not hold the defendant responsible.
Very considerable testimony was taken as to whether the conductor had notified the passengers to keep their seats and informed them of the danger of standing upon the platform. There is testimony from several witnesses to the effect that the conductor, in a tone loud enough to be heard through the car, told different passengers to keep their seats — one of the witnesses stating that Mrs. De Mahy herself was one of those to whom he addressed himself. The conductor swears that he did tell the passengers to do so, and the testimony to the contrary is purely negative, and by parties who, being engaged in conversation, were not likely to have noticed this fact. There is no testimony as to whether he warned them of any danger to result from not observing his directions, but we think there was no particular dahger to have been apprehended unless under such exceptional circumstances as occurred on this occasion (the going of so young a child upon the platform), which he could not fairly be expected to have anticipated.
The evidence shows that the employes of the company were, at the time of the coupling, at their usual respective posts for that par *1343 ticular work; and further shows that when the coupling took place the approach of the cars for that purpose could be seen through the baggage car by those who had not their backs turned in that direction, as seems unfortunately to have been the case with Mrs. De Mahy at that time.
For the reasons herein assigned it is hereby ordered, adjudged and decreed that the verdict of the jury be set aside and the judgment thereon rendered be annulled, avoided and reversed, and that there be judgment in favor of defendant against plaintiffs rejecting their demand and dismissing their suit with costs in both courts.
Mr. Justice Parlange takes no part.