## No. 12,270.

LOUIS A. SIBLEY VS. NEW ORLEANS CITY & LAKE RAILROAD COMPANY AND LOUISIANA ELECTRIC LIGHT COMPANY, IN SOLIDO.

Riding outside of the car on a running step is unusual and dangerous.

There were others on the step, near the plaintiff; they all passed a pole equally as near as the one by which a moment after the plaintiff was knocked off and severely injured.

Taking under consideration the width of the step and the distance from the step to the pole, the rock and sway of the car in motion does not account for the contact of the plaintiff with the pole.

The plaintiff must have leaned back into the darkness (either to jump off, or for some other cause) to an extent that his head came in contact with the pole.

If one's negligence proximately contributed to the injury, so that without his concurring fault it would not have happened, he can not recover for the injury.

A PPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Benjamin Rice Forman* and *B. R. Forman, Jr.*, for Plaintiff, Appellant.

*Hugh L. Bayne* and *Denègre, Blair & Denègre* for Defendants, Appellees.

Argued and submitted February 3, 1897.
Opinion handed down February 15, 1897.
Rehearing refused April 26, 1897.

The opinion of the court was delivered by
BREAUX, J. Plaintiff brought this action against the defendant for the sum of fifty thousand dollars.

On the 14th of July, 1895, at about 12 o'clock at night, plaintiff was a passenger on the inbound West End train of the defendant railroad company. The car was a summer car. At the corner of Canal and Tonti streets he was knocked off this car by an electric light pole of the defendant light company. He was at the time riding upon the running steps of the car that runs along the side from front to rear. He was standing on the up-town side of the car. The car was on the right-hand track. He had paid his fare, which was collected by the conductor while he was riding on the step in the position in which he was when he got hurt.

He says that the conductor gave him no warning at the time and made no objection to his riding on the running steps; that he was riding on the steps because the car was crowded. He avers there was no standing room in the car; that when he was struck he was standing with his right hand on the railing of the dash-board and his left hand on the upright brass rod of the stanchion of the side of the

car; that he was looking toward the inside of the car; that it was usual to ride upon the steps of the summer cars when the cars are crowded, and that no warning of any sort had been given to him.

The distance of the pole that struck the plaintiff from the track was two feet eight inches. The width of the step of the summer car was one foot six inches. The pole that struck the plaintiff was nearer the track than any other save one, which stood at an equal distance from the track.

The witness for plaintiff, who made the measurement, testified that the extension of the car itself (the body of the car), beyond the rail was one foot and one inch, and that the distance between the outside rail to the nearest side of the pole was, at the locality, as before stated, two feet eight inches. On the other hand, the assistant superintendent of the defendant railroad company testified that the distance was twenty-six inches from the post at the locality of the accident to the side of the car, by his measurement, and that it was fifteen inches from the outer edge of the step running along the side of the car, leaving eleven inches for the width of the step, and fifteen inches from the edge of the steps to the pole. Something was said by one of plaintiff's witnesses about the lateral motion of the car. The extent of the spring or play of the motion was not known.

The other poles than those before mentioned of the Light Company were from the track a distance of three, four and five feet respectively.

The plaintiff was greatly and permanently injured.

To clear the grounds at the commencement of the discussion, we sought to settle the question of distance between the track, the car, the running steps and the alleged offending electric light pole.

There is variance in the testimony upon this point. It remains that in the brief and at the bar, plaintiff's position is, on this point, as follows, viz.: the width of the step of the summer car was one foot six inches and the distance from the step to the pole fourteen inches. If we take into consideration the fact that the unfortunate young man was struck on the temple near the ear, the distance of which the defendants contend, is correct, viz.: fifteen inches from the step to the pole.

The theory of the court a qua and of the defendant was that, as the plaintiff approached Tonti street in this city, either for the purpose of jumping off or ascertaining the distance of the train from Galvez

street, where he expected to get off, or from some other cause, he leaned back and protruded his body and head from the car into the darkness to such an extent that his head came in contact with the pole and he was knocked off.

The plaintiff raised an issue of fact upon this point and insists that the evidence is to the contrary; that he did not lean back to see how far he was from his street, and did not in the least change his position. His statement is that the distance from the post to the step was fourteen inches; that the cars rock and sway from side to side when moving rapidly; that the whole of the distance, (it is contended, in behalf of the plaintiff,) is accounted for in this wise. The length of his arms, counsel estimates, was fourteen inches; holding the stanchion as he was doing when he was hurt, his head reached the post, although his elbows remained unmoved to the sides without extending them in the least.

We have found it impossible, after a careful examination into the facts, to agree with counsel. The rock and sway of a car in motion are not proven in this case, we have already stated. In the case to which our attention was directed from the evidence it appeared that when in motion the wheels of each car have a lateral play on the rails of one and one-half inches. Summers vs. Crescent City Railroad Co., 34 An. 139-147.

One standing upright on the running steps of a summer car one foot and six inches in width, would not be exposed to a blow against a pole at the distance this pole was from these steps, because of the lateral motion of the car. His body despite this motion would remain within an entirely safe distance from the pole. Granted that it accounts for a limited distance of the intervening space, there remains at least one foot.

A passenger in a car who would needless'y protrude his head out of the window a distance of one foot, and receive a blow from a pole at that distance, which he had seen erected, as was the case with the plaintiff, and along a route familiar to him as the defendant railroad line is familiar to the plaintiff (having gone over it many times since a number of years, would not be entitled to damages).

In our view the one who chooses to ride on the running step has no greater right and is subject to the same rule. Ordinary prudence would suggest not to project one's body into the darkness a distance of one foot outside of the running steps on a car in motion.

The plaintiff, testifying, said:

"Q. You have ridden on these cars for the last six or seven years?

"A. I have.

"Q. And you knew these poles were alongside the track?

"A. There are posts in the middle of the track.

"Q. Then you know that?

"A. Yes, sir.

"Q. You saw that every day when you went out, then, didn't you?

"A. Yes, sir.

  *  *  *  *  *  *  *

"A. I wouldn't lean out of any car.

"Q. Then you think it would be dangerous for any man to do that?

"A. Yes, sir; to any man it would be imprudent."

"It is well settled that a passenger who voluntarily and unnecessarily places himself in a position of danger can not hold the railway responsible for injuries of which his position is the efficient cause." Peterson's Railway Accident Law, 282, 283.

We think the conclusion is inevitable, with the facts before us, that the defendant projected his head and thereby met with the sad accident of which he complains. There were other passengers on the running steps at the time; six in number; they passed other poles, and equally as near as the one which struck the plaintiff. Not one of these passengers was injured. It is evident had the plaintiff stood erect without leaning backward that he also would have passed without injury.

The plaintiff seeks to support the position that he was ordinarily prudent in riding upon the steps by quoting from Beach on Contributory Negligence, par. 149:

"It is not negligence *per se* for a passenger to ride upon the platform or steps of a railway car."

In the section from which the quotation is made, the text writer says: "But if there is standing room within the car it is negligent to occupy the platform."

It appears that the cars were crowded and that there were no vacant seats. It was not made evident, by preponderance of proof, that there was no standing room. In Chicago Railroad Company vs. Railroad Company, 6 Brad. (Ill.) 201, it was held: "So long as there is standing room in the cars he must ride there."

There is authority in support of the position, that upon this point

the burden of proof was with the plaintiff.   "He must prove that he was there from necessity and not from choice."   Camden vs. Railroad, 44 American Reports, p. 123.

To meet the weight of these authorities the plaintiff urged that he had paid his fare to the conductor while he was riding on the steps and that from him he received no warning.   We are not led to infer from the testimony that the defendant railroad company gave its sanction to riding on the steps of its cars.   On the contrary, there is evidence of record that it was against the express rule of the company.

Upon this subject, Mr. Beach very properly says:   " How can an employee authorize a passenger to violate, not only the express rule of the company, but also the rules that every prudent man establishes for himself for his own protection."   Par. 152.

In any case it does not relieve the passenger of the duty of care.

The District Judge, who saw and heard the witnesses, was satisfied from the evidence that plaintiff could have safely ridden upon the steps, if he had used ordinary care; that he did use ordinary care from the lake to Tonti street, and was not injured, although he passed the electric light poles situated in the two blocks just before reaching Tonti street (one of these poles was equally as near as the alleged offending pole and the other within a small fraction as near).

Having exposed himself as he did, the plaintiff is without right to recover damages from either of the defendant companies.

The judgment is affirmed.