PRO VO STY, J.
Plaintiff was a first-class passenger on the train of the defendant company from Franklin to Cypremort. As far as Baldwin, the train runs on the main line, and is composed of engine and tender and two passenger coaches; the front half of one of the passenger coaches serving as an express and baggage car. From Baldwin to Cypremort the train runs on a branch road, and is a mixed train, composed of the same two passenger coaches and of as many freight cars as happen to be at Baldwin to be taken along. When the train reaches Baldwin, the two passenger coaches are taken to a side track some half mile out from the station, and are left there while the engine is used for switching and making up the freight train. The freight train, when made up, is coupled to the passenger coaches, and then this-mixed train moves back to the station, and awaits there the time for departure. The time required for making up the freight train varies. It may be a few minutes, or over an hour, accordingly as there is. little or a great deal of switching to be done. On thé "day on which plaintiff received the injury for which he brings the present suit in damages, there were four freight cars to be taken along. The passenger coaches had been waiting on the side track for about three-quarters of an hour, when, the day being warm, plaintiff concluded to change his seat from the sunny side of the ear to the shady side. AA’hile he was in the act of doing so, the coach gave a sudden lurch, caused by the coupling to it of the freight train, that threw him off his feet. He fell to the floor, a.-ad in his fall broke his arm.
The defendant company’s contract was to carry plaintiff safely, and, to that end, to use the highest degree of care. It did nei-' ther. The evidence leaves no doubt that the coupling was negligently done. The freight cars were brought against the passenger coaches with unusual and unnecessary violence. The locomotive was in charge of the fireman, who failed to observe, or failed to heed, in time, the signal given him by the flagman to stop. While defendant contends —pro forma, we imagine — that there was no negligence on its part, its main reliance manifestly is upon the contention that plaintiff knew that a coupling was about to be made, or might be made at any moment, and that the coach would thereby be jarred more or less, and should have kept his seat; that to have left his seat and walked in the aisle, as he did, was negligence on his part, precluding recovery.
The learned counsel for defendant holds the ease to be exactly parallel with that of Shamblin v. Railroad Co., 114 La. 467, 38 South. 421, where the train was a freight train with only a caboose for passengers, and the train had stopped at a way station to pick up a single car, and the locomotive had gone 300 feet ahead to get this car, and plaintiff had left his seat through mere idle curiosity, and gone and stood at the back door of the caboose, although there were glaring notices on the walls of the caboose warning passengers of the danger of leaving their seats while switching was being done, and plaintiff was in the habit of traveling on this freight train, and knew that the jars from the couplings would throw a man off his feet.
The difference between that ease and the case at bar is manifest. In the case at bar *6 the train was not a freight’train, but a mixed train. Plaintiff had been traveling for years on this mixed train, and had never noticed that the jars and jolts were more severe than on ordinary passenger trains. He says that he would not have stood up if he had known that a coupling was about to be made; but by this we understand that, even on an ordinary passenger train, he would not stand up if he knew that a coupling was about to be made. And there can be no doubt that, if the passenger coaches of a mixed train were as dangerous as the caboose of a freight train, the same notices would be placarded on their walls as on those of the caboose, warning passengers of the danger of leaving their seats while switching was being done.
It would have been out of all reason for the defendant company to have expected that during this long wait upon this side track the passengers on these coaches would keep their seats like prisoners. This the learned counsel for defendant fully realize, and they accordingly disclaim the intention of so contending. But, if the passengers were not prisoners in their seats, wherein consisted the negligence of plaintiff in leaving his seat? It is said that plaintiff, as an experienced traveler on that particular road, perfectly familiar with the mode of operating the train, should have known that the moment for a coupling to be made had come, and should not have left his seat just then. But whence was he to derive that knowledge? Not from any computation of time, since only about three-quarters of an hour had elapsed, whereas the switching, etc., might last over an hour. The learned counsel are driven to suggest that plaintiff might have looked out of the window to find out whether the coupling was not about to be made. But, manifestly, plaintiff was not under the obligation of putting his head out of the car window. His doing so would have constituted negligence, precluding recovery for any injury received while in the act.
The judgment must be affirmed. It is large — $3,000. Plaintiff has not lost entirely the use of his hand. He cannot close it entirely; that is all. He has not been subjected to any very great sufferings. But this court is indisposed to change the verdicts of juries in matters of mere amount, unless clearly out of proportion.
Judgment affirmed.