LAND, J.
This is a suit for damages for personal injuries alleged to have been sustained by J. G. Miarston and his minor daughter, Caroline, respectively, as the result of a collision between an automobile in which they were riding and an electric car of the defendant company, in Texas avenue, city *19 of Shreveport, on Sunday morning, December 1, 1912. ■
As set forth in this petition, on that morning, Marston, as he was driving his automobile out of the garage on the west side of said avenue, in which it was kept, for a ride with his children, towards the nearest street car track of the defendant, which was only about 12 feet from the sidewalk, which was about 10 feet wide—
“looked up and down the street each way as he drove out of the large door of the garage to the sidewalk, and while his car was still in motion, going into the avenue and approaching the west track of said car line, he saw one of the defendant’s cars, known as a Fairfield car, approaching Murphy street going south, which was then 300 to 400 feet away; that he was then in motion and not over 15 or 20 feet from the car line, and would have had plenty of time to cross the track, and had every reason to so believe had said car been operated at a legal rate of speed, but that said Fairfield car, operated by defendant’s employés, was running at a very rapid pace, something like 30 or 40 miles an hour, and the motorman thereon was not looking, or handling his car as carefully as he should, and that on account of his reckless and rapid rate of running, and owing to the further fact that he was not keeping a proper lookout, he recklessly, carelessly, and negligently ran his car into petitioner’s automobile without warning or making any attempt to put on the brakes or check up his car until he had struck your plaintiff’s car about the middle of the side; that the contact was so hard as to drive the front part of the fender of the car into the side of the automobile, and to push said automobile in front of car for a distance of 60 or 70 feet, crushing the wheels of the auto and shoving it ahead.”
The petition alleged that the girl, Caroline, was thrown from the anto, down between the street car and the auto, and under the street car, where she was dragged for some distance, and in consequence sustained painful, serious, disfiguring, and permanent injuries, detailed in the petition, for which the plaintiff, in her behalf, claimed the sum of $8,500, as damages. Plaintiff in his own behalf claimed $2,050 damages, itemized as follows:
For doctor’s bills and medicine, $250; for damage to auto, $250; for operation to be performed on his daughter, $300; for loss of time and extra expense, $250; and for anxiety and worry over his daughter’s condition, $1,000.
The defendant in its answer denies a number of the allegations of the petition, and averred that at the time plaintiff’s machine emerged from the garage, the defendant’s street car was at a point, very close to the place where plaintiff was attempting to cross its tracks. Defendant, further answering, specially denied that its street car was operated at a very rapid or illegal rate of speed, or that the motorman was negligent as alleged in the petition, and averred that said accident was the result wholly and entirely of the carelessness and recklessness of plaintiff himself in the operation of the automobile in question; and defendant further pleaded, in the alternative, that the plaintiff was guilty of contributory negligence.
The case was tried, and the jury found a verdict for $550, in favor of the plaintiff, and one for $8,500 in favor of the minor, Caroline.
From a judgment pursuant to the verdict, the defendant has appealed.
Plaintiff’s version of the accident is to the effect that, when about 20 feet from the street car track, he looked and saw the top of an electric car coming in his direction, as it was ascending an elevation in the street, about 300 feet away; that he drove slowly toward the crossing, and the next thing that attracted his attention was a cry from his little boy on the back seat to “look out,” and just about the same time the electric car hit the auto, and the plaintiff was knocked senseless. Plaintiff testified that the electric car ran 300 feet while the auto was going 20 feet; and that he had plenty of time to cross the track if the electric car had been running at a moderate rate of speed. Plaintiff on cross-examination stated that he did not look again in the direction of the approaching electric car, and that his auto was going from two to four miles an hour, and could *21 have been stopped within from 2 to 4 feet. Henderson, an expert, testified that the small Ford car of the plaintiff, going at that rate of speed, could have been stopped within a foot.
Plaintiff, of course, knew nothing of the rate of the speed of the street car, as he saw only its top some 300 feet away, and never saw it again until the moment of the collision.
One nonexpert witness for the plaintiff stated that the car was running full speed at the time, or “faster than cars usually run,” another that the car was running “a pretty rapid clip,” and another (a passenger) that the car was going “at a fairly good rate of speed,” above ordinary. For the defense, another passenger testified that there was “nothing unusual about the speed of the car,” an ex-motorman stated that the car was going six or eight miles an hour; and two motormen and a conductor that the speed of the car was not more than eight miles an hour.
In the face of this testimony it cannot be justly said that the alleged negligence of the motorman, as to the rate of speed of the car, has been proven by a preponderance of evidence.
On the other hand, the plaintiff, after seeing the electric car approaching, could easily have avoided the collision by stopping his auto. Instead of so doing, the plaintiff took the chance of crossing the track ahead of the electric car.
In a recent case this court said:
“We affirm the doctrine heretofore announced in two very similar cases * * * that to attempt to drive a vehicle across street railway tracks in front of an approaching car, which could and should have been seen with ordinary care, * * * is such negligence as must prevent the recovery of damages for injuries resulting from a collision with the car.” McShane v. New Orleans Ry. & Light Co., 137 La. 832, 69 South. 268.
The motorman had the right to assume that the plaintiff, who was driving slowly, would stop or turn his machine before reaching the car tracks. Plaintiff’s' intention to cross could not have manifested itself to an observer until he was within a few feet qf the rails. There is the usual conflicting evidence as to the actions of the motorman when the danger of a collision became imminent. The evidence for plaintiff on this subject is largely negative in its character. The evidence of the witnesses for the defense is in the main positive in its nature. The testimony of the motorman as to the accident is corroborated on material points by the conductor on his car, the motorman of another car, which came up just before the collision, and by an ex-motorman. The motorman of the car in question stated that as soon as he saw the auto coming out of the garage, he sounded his gong and applied the brakes, and that as soon as he realized that the plaintiff intended to cross the tracks, he reversed his machine and sanded the rails. He stated that he was about 75 feet from the garage when he applied the brakes, and about 40 feet away when he reversed and sanded the rails. Other eyewitnesses estimate the first distance at from 60 to 70 feet. Plaintiff by his own negligence created a sudden emergency, which did not give the motorman time to avoid the collision. The plaintiff saw the car, and therefore had ample notice of its approach. Without looking again he attempted to cross the track immediately in front of the moving car. Hence plaintiff’s own reckless act was the proximate cause of the collision.
There is not sufficient evidence in the record to prove that' the speed of the car was excessive or dangerous. The fact that the ear shoved the auto along the track about 60 to 70 feet from the point of collision as alleged, or as per estimate of motorneer 102 feet, may have been due to the lightness of the auto, the downgrade, and the slippery rails.
*23 The fact per se does not prove that the car was operated at' a dangerous speed, such as from 30 to 40 miles an hour, as alleged in the petition. The motorneer was bound to slow up at the end of the block in order to turn into Jordan street.
It is therefore ordered that the judgment and verdict below be reversed, and that plaintiff’s suit be dismissed, with costs.
O’NIELL, J., dissents.