(92 South. 402)

No. 23702.

## SOUTHALL v. SMITH.

(June 5, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations** ⊜═705(1)—**Automobile driver liable for putting himself in position where he must run into some one to save himself.**

An automobile driver is liable if he puts himself in a position where, in order to save himself from a collision, he must run into some one else.

2. **Municipal corporations** ⊜═705(1)—**Driver exercising no care in approaching corner held liable for injury in avoiding collision.**

It was the duty of an automobile driver approaching a street corner where the view was obstructed by a building to be doubly careful, and where he exercised no care at all, though he knew there was an unusual number of people on the streets, and that his foot brake was not working, he was liable for running into plaintiff in turning to avoid a collision with an automobile which came suddenly around the corner.

3. **Municipal corporations** ⊜═705(10)—**Automobile driver injured while searching for trouble and cranking car while on the street not negligent.**

Where the engine of an automobile, which plaintiff was driving for the purpose of testing it, went dead in the middle of the street, he was not negligent in searching for the trouble and then cranking the car while on the street.

4. **Damages** ⊜═132(15)—**$5,000 held inadequate for loss of leg and incidental suffering, etc., and to be increased to $7,500.**

Where an able-bodied blacksmith and automobile mechanic, earning $1,800 a year, was struck by an automobile, necessitating the amputation of his leg, and was in the hospital for 44 days and suffered physically and mentally, and was still unable to work 15 months after the accident, and had to take his children out of school to support the family, a judgment for $5,000 was inadequate, and will be increased to $7,500.

Appeal from Seventh Judicial District Court, Parish of Richland; John R. McIntosh, Judge.

Action by M. A. Southall against James L. Smith. From a judgment for plaintiff, defendant appeals. Judgment increased and affirmed.

George Wesley Smith, of Rayville, for appellant.

Madison & Madison, of Bastrop, for appellee.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

PROVOSTY, C. J. Middle street in the village of Mangam intersects Harris street at right angles. Both are mere dirt roads, and were dry at the time of the occurrence which has given rise to this suit. A colored man to whom plaintiff had sold a Ford automobile having complained to plaintiff that something was the matter with the car, plaintiff got into the car with the colored man to test it, and drove out of Harris street into Middle street. As they passed the property line of Harris street, the engine went dead, and the car came to a stop within a few feet of this Harris street property line, and in the center of Middle street. Both men got out of the car. Plaintiff put up the hood to see what was the matter, and finding nothing wrong put it down again, and after having flooded the carburetor proceeded to crank the car. In doing this he stood in front of the car, facing it, with his back towards up Middle street. Defendant's car, a Dodge, driven by defendant, came down Middle street and ran into him and his car, crushing his leg, and bruising his back severely. The force of the impact moved the Ford car back into Harris street some 18 feet from where it had been standing. At defendant's right, as he came down Middle street, was a fence. Between this fence and the Ford automobile there was a space of 21 feet. Between the Ford automobile and the other side of the street there was a horse and buggy tied to a tree. Between this buggy and the Ford automobile the space would have been sufficient to allow the

Dodge car to pass, but only by driving slowly and cautiously. Several witnesses testified that the tracks of defendant's car upon the dirt road showed that defendant had come down straight upon plaintiff.

[1, 2] Defendant's version is that his running upon plaintiff was due to his having had to swerve to the left in order to avoid colliding with another automobile which had suddenly turned the corner from Harris street into Middle street at his right. If we accept this version, still defendant was at fault, and is liable, for he should have had his car under better control. An automobile driver cannot put himself in a position where, in order to save himself, he must run into some one else, and then plead that he could not help it, and therefore is not liable. Defendant was familiar with the situation, and as he approached this corner of Harris and Middle streets he was aware that a car might suddenly appear around the corner as he says one did. At this corner was a large barn which cut off from sight any automobile or other vehicle about to come into Middle street from that direction. This impossibility of knowing whether a car was not approaching from that direction, and might not suddenly appear, as defendant says one did, made it necessary for defendant to be doubly careful.

"It is part of the duty of the operator of a motor vehicle to keep his machine always under control so as to avoid collisions with pedestrians and other persons using the highway. He has no right to assume that the road is clear, but under all circumstances and at all times he must be vigilant and must anticipate and expect the presence of others. Accordingly the fact that he did not know that any one was on the highway is no excuse for conduct which would have amounted to recklessness if he had known that another vehicle or person was approaching. Drivers of motor vehicles must be specially watchful in anticipation of the presence of others at places where other vehicles are constantly passing, and where men, women and children are liable to be crossing, such as corners at the intersection of streets. * * *" 2 R. C. L. 1184.

We find that defendant exercised no care at all. He came to this blind corner without slackening speed at all, although he knew it was a Saturday afternoon when there would be an unusual number of people on the streets. The foot brake of his car was not working, so that the most ordinary consideration for others would have dictated that he should slow down and be very cautious in approaching this corner. He himself does not say that he slackened his speed—whatever that speed was. While he says that if anything was the matter with the brakes he did not know it, his testimony as a whole amounts practically to an admission that the foot brake was not in working order. Thus he testified:

"Q. Make any effort to stop your car?
"A. Yes, sir.
"Q. What did you do?
"A. I threw on my emergency brake and stopped the car; but it was done so quick and all of a sudden it did not stop until it struck Mr. Southall and his car."

And again:

"State whether or not the brakes actually held at the time of the accident.
"A. Yes, sir; the emergency did."

There is evidence that defendant was a reckless driver. This evidence was sought to be combated, but we are led to give some credit to it by defendant's manner of driving as appears in the present case.

He says he blew his horn in approaching this corner, but no one of the several witnesses in the immediate proximity heard this horn. Our conclusion is that defendant was negligent, and is liable.

[3] He contends that plaintiff was using the street as a repair shop, and that this was negligence on plaintiff's part, precluding recovery. The evidence utterly fails to show that plaintiff did more than what is done every day upon the public streets by persons whose cars stop functioning, which necessarily has to be done at the place where the car happens to stop.

[4] As a result of the injury, plaintiff's leg had to be amputated. At the date of the accident he was 38 years old, able-bodied, earning about $1,800 a year as a blacksmith and automobile mechanic. He remained 44 days in the hospital. His physical suffering was very great; and he adds that his mental suffering also was great, owing to the fact that his life was for a time despaired of and that the thought of leaving his wife and seven children unprovided for "worried him to death." At the time of the trial, some 15 months after the accident, he was still unable to do any work. He had had to take his three eldest children out of school in order that they might go to work for supporting the family.

The case was tried without a jury. The learned trial judge found as we do on the question of defendant's having been negligent, but fixed the amount of the damages at only $5,000. We have hesitated whether to increase them to $10,000; but have concluded that, perhaps, under all the circumstances, the amount of $7,500 would meet more nearly the exigencies of the case.

The judgment appealed from is increased to $7,500, and as thus increased is affirmed, with costs in both courts.