MATTHEWS v. N. O. PUBLIC
SERVICE. INC.

(April 2, 1928. Opinion and Decree.)
(May 7, 1928. Rehearing Refused.)

(*Syllabus by the Court*)

1. Louisiana Digest—Street and Interurban
   Railroads—Par. 27.

Riding outside of the car on the step is
   unusual, dangerous and negligent if
   there is room inside.

2. Louisiana Digest—Street and Interurban
   Railroads—Par. 34.

The burden is on plaintiff to prove that
   he was riding there from necessity and
   not from choice.

3. Louisiana Digest—Street and Interurban
   Railroads—Par. 19.

Passengers on street cars assume the risk
   of injury from ordinary jars and jolts
   incident to a careful operation of the
   cars.

Appeal from Civil District Court. Hon.
E. K. Skinner, Judge.

Action by E. C. Matthews against N. O.
Public Service Inc.

There was judgment for defendant and
plaintiff appealed.

Judgment affirmed

Norman, Breckwoldi and Schwartz, of
New Orleans, attorneys for plaintiff, ap-
pellant.

B. W. Kernan, of New Orleans, attorney
for defendant, appellee.

CLAIBORNE, J. The plaintiff claims of
the defendant $20,000 for damages alleged
to have been suffered by him while rid-
ing upon one of defendant's cars.

He alleges that on October 1, 1924, at
about five o'clock p. m., he boarded a car
of defendant company at the corner of
Canal and Lopez going towards the river;
that other persons boarded the same car
at the same time and place; that the rear
platform of the car over which he had
to pass to get into the car proper, was so
crowded that it was not possible for him
to get upon the platform immediately upon
boarding the same, and that he had to ride
upon the side steps of the car behind an-
other passenger, and that said car had trav-
eled midway between Lopez and Salcedo
Streets before he could get upon the rear
platform; that up to that time the only
hold he could get was the rear post form-
ing the corner of the rear vestibule and
that his hold was insecure owing to that
position; that the rear platform was
jammed with laboring men returning to
the city, and was obstructed with tool
boxes and other packages belonging to
passengers on the car, and that it was not
possible to get upon the platform or into
the car proper without stumbling over
these tool boxes; that the car had reached
about midway between Lopez and Salcedo
before it was possible for him to move
from the step of the car to the platform;
that when the car had reached the inter-
section of Salcedo Street, or one square
from the point where he had boarded the
car, he had both feet upon the edge of the
platform of the car; that when the car was
proceeding over the said intersection he
endeavored to take another step, when he
stumbled over one of the tool boxes, or
packages which obstructed the floor of
the platform and which it was not possible
to see owing to the crowded condition of
the rear platform; that simultaneously with

his stumbling, the motorman put on the air brakes of said car which caused said car to suddenly slack its speed, swaying the passengers upon the platform towards the rear of the car, resulting in his being thrown from the car out upon the street; from which he suffered the following injuries: Breaking of the left leg, bruising of hip, dislocation of left shoulder and elbow, and scalp wound; that he was taken to the Charity Hospital where he remained one week; that he was still, on January 5, 1925, under the care of a physician, and that his injuries will make him a cripple for the balance of his life; that it is customary for passengers to ride upon the steps and rear platform of defendant's cars, and the defendant permits it to be done.

That he is no longer able to follow his occupation of insurance solicitor; that "his injury was caused by the deliberate, malicious, wanton, wilful, and unlawful action on the part of the defendant's employees and agents;" that the defendant is liable for its "lack of due diligence, care, and safety;" that it is bound to use the utmost care and skill in the performance of its duties towards petitioner who was a passenger; that it was the duty of the defendant to furnish a safe and unobstructed entrance for its passengers and not to permit the rear platform to become so crowded with passengers and packages as to endanger and prevent the safe receiving and carriage of passengers boarding said car, and that he in no way contributed to the accident. For all of which plaintiff claims $20,000 damages.

The defendant denied all the allegations of plaintiff's petition. Further answering it averred, that the plaintiff, while standing on the rear step of the car, lost his balance and fell off the car; "that whatever injuries the plaintiff sustained were due to his own negligence and imprudent conduct in riding upon the platform of the car by the open door, and in failing to take that degree of care required by the circumstances then and there existing," and that he might have gone into the car where there was room.

There was judgment for defendant and plaintiff has appealed.

The reasons for judgment were as follows:

The plaintiff boarded an Esplanade car of defendant line inward bound at Lopez Street about 4 or 5 o'clock in the evening.

He alleges that the car was overcrowded and that he stood on the back part of the step leading into the car because, as he avers, the rear platform was so obstructed that he could not enter the body of it as the safest place for passengers to ride. The evidence in part shows that he either stood on the step with both feet or had one foot on the step and the other on the bumper on the back of the car. Either position is unusual for passengers to ride. He rode nearly one entire block when the stopping of the car at the next corner for other passengers jolted him and he fell from his perilous position inflicting the injuries sued for.

It is true that if the Company, by indirection, makes a passenger ride in a dangerous place the passenger is entitled to so ride, and the liability of the defendant is enhanced thereby. But there must be certainty that the accident was not caused by the continuous contributory negligence of the injured party. I think the evidence shows conclusively that the platform forming the entrance of the door of the car, and a safe place for passengers, was not so crowded or obstructed that plaintiff could not easily reach a safe place to ride. Even had he used care in the dan-

gerous place he had taken by holding onto the post of the vestibule, the slight motion resulting from the slowing of the car for its next stop, would not have jolted him off, inflicting the damage sued for. He was guilty of contributory negligence continuously and I think not entitled to judgment. Suit dismissed.

The plaintiff examined two witnesses covering many pages of testimony.

1st. Frank Grancelloni testified that he boarded the car at the corner of Lopez and Canal at the same time as the plaintiff and also a lady and a little girl; they got into the car, but the witness and the plaintiff could not, because there were tool boxes on the platform; they remained on the lower steps, witness holding the front grab handle and plaintiff behind him; the tool boxes were scattered all around, right in the passage way, two of them in the doorway leaving about four inches passageway for passengers to get into the the car; he saw no other obstruction; the tool boxes were open, with carpenter tools protruding, hammers, squares, and things like that; he saw three tool boxes in the doorway about five inches from the edge of the platform; there were about five tool boxes on the platform and about five or six passengers; the conductor was standing in the middle of the platform; the tool boxes prevented plaintiff from getting upon the platform; he asked the conductor to stop the car that he might get off as he and the plaintiff were falling off, but the conductor paid no attention; plaintiff fell right on the corner of Salcedo; he had not gotten on the platform of the street car at all, he was on the back steps all the time; when he fell off the car he had his right foot on the platform and the other on the steps; he fell backwards; the car was running in the middle of the block about 15 miles an hour; when it got near the corner it reduced its speed to about six miles, when the plaintiff fell on his back towards the lake; when they boarded the car they did not get upon the platform because the conductor rang the bell and did not give them time; after the accident he got back into the car and sat down, and rode to the corner of Dryades; he did not notice any one remove the tool boxes; he gave his name to the plaintiff as a witness; he did not give it to Mr. Murphy, agent for the defendant; there were not many people inside of the car; the tool boxes were laying on the platform within five inches of the edge and lengthwise of the car, and were two and a half feet long, laying in a triangle; the plaintiff had his right foot on the platform and the other on the step; witness never rode on car steps; witness was a chauffeur for the University automobiles.

2nd. R. M. Chamberlain boarded the car at Carrollton Ave.; there were three open tool boxes on the platform and some kindling wood and half dozen passengers; the inside of the car was not crowded, there were vacant seats in front; he had no difficulty getting into the car noticing his step.

3rd. The plaintiff testified that he boarded the car at Canal and Lopez coming into town; four other persons were waiting to take the car, a lady and a child and two other men; the entrance of the car was blocked with the tool boxes and bundles of wood; the lady and the child got into the car and the other gentleman next; he was the last one to board the car; he did not get into the car because it moved on before he had time to get in; he was holding on to the post of the rear vestibule with his left hand, trying to get into position to get into the car; these tool boxes were in his way not more than four inches from the end of the car; two or three feet long and ten inches deep and wide; hammer handles, and a square, and

a hand saw were protruding from them; it was necessary to step over them or to go between them to work your way into the car; there were ten to twelve inches between the boxes; he was hurt in making an effort to get on to the platform; he stepped on the platform with one foot, and when he made the other step, he hung his trousers in the handles of one of the tool boxes and the car seemed to come to a sudden stop or slowed its speed up considerably, and hanging his trousers in this handle of the tool box, he lost his balance and it threw him out "backwards."

On behalf of defendant.

1st.   F. B. Martin testified that he was president of the First National Insurance Company; that Chamberlain worked for him from May to July, 1925, as an agent and that the plaintiff was assistant manager over Chamberlain.

2nd.   Peter James testified that he boarded the same car at the corner of Lopez and Canal upon which the plaintiff was, and that he had a tool box, with him which he produced; it was a closed box, always closed with a lock on it; his helper, Peters, and another young man got on the car with him; his helper put the tool box against the door of the left hand side going into Canal Street and stood in front of witness; witness stood in the back and on the bumper; there were very few people on the platform, 5 or 6; he saw the accident happen; the plaintiff had one foot on the step and one on the back bumper; he was right near witness on the right hand side; the car was coming to a stop and some man tried to board the car, and he and plaintiff reached for him, and plaintiff lost his balance, and as the car was coming to a stop, plaintiff swung around and fell, and witness jumped off the car and picked him up, and an automobile came along and took him to the hospital together with witness; there was one tool box on the platform, three shovels and a pick ax, all on the left hand side well out of the way; there was another man on the bumper on his left side; he boarded the car with witness; witness never worked for the defendant company, was working for Schiro; there were no other obstructions on the platform; the step of the platform up into the car was absolutely clear; there were lots of room to board the car; there was no one next to plaintiff on the platform, except a little man who was in the front end of the step.

3rd.   Elbert Peters testified that he worked for W. D. Cleary and in October last was working for Peter James; he was on the car with James when the accident happened, got on at the same time; was standing on the platform; he put the tool box against the closed door and stood in front of it; there was no other tool box there.

This witness was so uncertain and contradictory in his testimony that, at the suggestion of the Court, the defendant called another witness.

4th.   Charles Root is a sheet metal worker; he was on the car at the time of the accident; he was standing on the rear platform between the controller and the edge of the platform; he boarded the car near Carrollton Avenue; there were quite a number of people on the platform; when he boarded the car he did not notice any tool boxes at all on the platform; if a tool box had been right by where he was standing he would have noticed it, he did not notice any against the body of the car; the plaintiff when he fell was standing on the step or the edge of the platform; the car made the regular stop, there was no difference between that stop and the ordinary stop, it did not bother him

any; there were a few people on the back platform; he did not try to get in as he was in his working clothes; there was a clear space in front of him; he does not remember seeing any bundles of wood on the platform; he does not think there was any one between him and the step; on the left was the conductor.

5th. Eugene Jones is a painter; he lives down on Frenchmen Street, he boarded the car on Lopez; he was riding on the car from which the accident occurred; he was standing on the back of the bumper, another little fellow was standing along side of him, and then came the platform; the plaintiff had one foot on the step and one on the bumper; there was one tool box on the platform on the left hand side of the car; there were no other tool boxes; the car approached Salcedo Street at an ordinary speed and stopped; no unusual jolt; there was another passenger on the step with the plaintiff; some one tried to board the car before it came to Salcedo Street and slipped; the plaintiff tried to catch him and fell into the street; the owner of the tool box picked him up and drove to the hospital with him; plaintiff had lots of room to get into the car; only a few people in the vestibule; the pick ax and shovels were on the left hand side in the back by the window.

6th. R. H. Cochran was conductor for the defendant car whence the accident happened; he was standing by the controller; there were half a dozen people on the left hand side of the platform; he believes there was one tool box on the left hand side of the door; with shovels and tools; the plaintiff was standing on the step with his right foot, his left foot on either the bumper or the back fender; the platform was clear all the way through and one could get into the car all right; it was not the crowded condition of the car

that made plaintiff assume the position he was in; no one called upon the witness to stop the car to let him get in.

7th. George E. Murphy, employed by the defendant, investigated the accident, he interviewed Granelloni; Granelloni told him that he boarded the car at the corner of Lopez and Canal; that he was on the steps with the plaintiff; that when the car started he lost his balance and the plaintiff attempted to keep him from falling, and in so doing, lost his balance and fell out in the street; the next day he saw the plaintiff who told him that when the car approached the corner of Salcedo, in coming to a stop, it jolted and threw him from the car into the street; he never said anything about tool boxes; both told him the car was crowded.

Several witnesses testified that at the time of the accident the plaintiff was under the influence of liquor and that a flask of whiskey was removed from his hip pocket; others denied this.

We have seen from the opinion of the trial judge that he came to a conclusion on two points:

1st. That the plaintiff, by choice, either stood upon the step with two feet, or with one foot upon the step and the other upon the bumper, on the back of the car, and

2nd. That the platform was not so crowded with passengers or obstructed with tool boxes that plaintiff could not have easily reached a safe place to ride.

We are of the opinion that the great preponderance of the testimony, both in numbers and in weight supports his opinion and we agree with him.

Having selected that more dangerous position the plaintiff was guilty of negli-

gence. Bosey, et al., vs. L. R. & N. Co., 137 La. 457, 68 So. 824.

"Riding outside of the car on a running step is unusual and dangerous. If one's negligence proximately contributed to the injury, so that without his concurring fault it would not have happened, he cannot recover for the injury." Sibley vs. Rrd., 49 La. Ann. 588, 21 So. 850.

"But if there is standing room within the car it is negligent to occupy the platform * * * So long as there is standing room in the cars he must ride there" * * * upon this point the burden of proof was with the plaintiff. "He must prove that he was there from necessity and not from choice." Idem, p. 592.

According to the plaintiff's own testimony when he proceeded to board the car he saw a thick crowd upon the platform and a number of tool boxes and spades, and bundles of wood obstructing the entrance upon the platform. Notwithstanding these obstacles he voluntarily chose to board the car, to remain upon the step, and to take the chances and risks of the situation. He did this by choice and not by compulsion. He was not taken by surprise. "He who loves danger shall perish by it."

In Olivier vs. Rrd., 43 La. Ann. 804, 9 South. 431, this Court said:

"A party voluntarily boarding a crowded train and taking his place on the platform of a car without complaint or effort to obtain a seat, or other better accommodation, cannot assign the overcrowding of the train as negligence in the railroad company. On the other hand, when the conductor sees him in that position and collects his fare without objection, the Company cannot attribute its occupancy as negligence. In such case the passenger is bound to conduct himself with the care and caution which his position requires, and

the Company is bound to guard him from dangers incident to the position arising from its own acts."

In the case of Hopkins vs. Rrd., 150 La. 61, 90 So. 512, the Court reversed the verdict of a jury and by a divided Court held the defendant liable. The present case seems to rest upon that case for a judgment. But this difference distinguishes the two. In the Hopkins case the plaintiff, a woman, suffered injuries "while alighting from a street car." She had a right to leave the car and in order to do so she was obliged to pass over the platform and the Company was under obligation to secure to her a safe exit. While in the case under consideration, the plaintiff was not obliged to board a crowded car, nor to stand upon the steps, for he might have waited for another car. If he chose to board it and with his eyes open, to remain in the dangerous position he was negligent; and if he suffered from the conditions of the situation he had selected and not from any fault of the defendant he cannot recover from it. Viator vs. N. O. Ry. & Light Co., 139 La. 439, 71 So. 733. Plaintiff attributes his fall to the tool boxes on the platform. But he had seen those. According to him there were three boxes, according to one of his two witnesses there were five boxes. In the case of Williams vs. Liberty Stores, 148 La. 450, the Court held:

"It is negligence for a store proprietor to leave a box in the aisle used by customers inspecting merchandise. A customer in a store who stumbled over a box in an aisle while going in a hurry, the box being in full view for a distance of 27 feet, held contributorily negligent as a matter of law."

Plaintiff's main witness, Granelloni, attributes plaintiff's fall to the jolting of the car when it retarded its speed on approaching Salcedo Street.

There is no evidence whatever that there were any unusual jolts, or jerks, or jars, or lurches that preceded the stopping of the car. But if there were the defendant could be made liable only for unnecessary or extraordinary jolts, or such as do not necessarily occur with a careful handling of the car. Moby vs. Morgan's La. & T. R. R. & Steamship Co., 45 La. Ann. 1329, 14 So. 61; Aiken vs. Southern Pac. Co., 157-120 La. 933, 29 So. 1; McGinn vs. N. O. Ry. & Light Co., 118 La. Ann. 811, 43 So. 458; Bosey vs. L. R. & N., 137 La. Ann. 452, 68 So. 824; Veith vs. N. O. Ry. & Light Co., 152 La. 47, 92 So. 730; Philips vs. Rrd., 106 La. 592, 31 So. 135.

"From the whole case, as presented, we conclude that the plaintiff left his seat whilst the car was in motion and took a position upon the lower step of the platform preparatory to alighting, when the car should reach the crossing. It may be that the motorman had slightly miscalculated, and that it became necessary just then to accelerate the motion of the car in order that the rear platform might be exactly over the crossing when the car should stop, and that the plaintiff, resting possibly on one foot, was taken by surprise by the forward movement and lost his balance. But slight irregularities of movement are common incidents of the starting and stopping of street cars, and those who prepare to alight, and who do alight whilst the cars are in motion assume the risk resulting from such irregularities."

"Therefore his act of leaving his seat and standing was one of the proximate causes of the accident and under well settled law. (Rapaje Dig., Vo. 2, p. 440) precludes recovery if it was done negligently; that is to say, if it was done without necessity and with knowledge, actual or presumptive, of the danger." Shanblin vs. Rrd., 114 La. 467, 38 So. 421 (473).

"Passengers on electric street cars assume the risk of injury from ordinary jars and jolts incident to the operation of such cars with due care and in the usual manner." Vincent vs. Rrd., 134 La. 654, 64 So. 654; Sharp vs. N. O. City R. Co., 111 La. 395, 35 So. 614; Masicot vs. N. O. Ry. & Light Co., 141 La. 622, 75 So. 490.