No. 13,724

Orleans

BACON v. N. O. PUBLIC SERVICE, INC., ET AL.

(October 19, 1931.   Opinion and Decree.)
(November 30, 1931.   Rehearing Refused.)

Milling, Godchaux, Saal & Milling, M. Truman Woodward, Jr., and Lawrence K. Benson, of New Orleans, attorneys for plaintiff, appellee.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellant.

HIGGINS, J. Plaintiff brings this suit in his own behalf and on behalf of his minor son against the New Orleans Public Service, Inc., and Archie J. Lejeune in solido for damages alleged to have resulted from a collision between a Ford truck belonging to Lejeune and a street car operated by the New Orleans Public Service, Inc. The accident occurred at the corner of Dumaine street and Carrollton avenue, on Mardi Gras Day, February 16, 1926, at 3:30 p. m.

The plaintiff claims that the accident was caused through the joint and concurrent negligence of the defendants, and that they are liable on the following grounds: First, because the street car did not come to a full stop upon reaching the intersection of Carrollton avenue, and that it did not accord the truck the right of way as required by the traffic ordinance of the city; second, because the motorman was guilty of negligence in running the car at an excessive rate of speed and in not keeping a proper lookout; third, because the motorman permitted the right front door of the vestibule of the street car to remain open in violation of Act 16 of 1914; fourth, because the driver of the truck was at fault in operating his truck at an excessive rate of speed, without efficient brakes, and in failing to keep a proper lookout.

The street car company admitted the accident and injury to plaintiff's son, who was a passenger, but denied that the motorman was guilty of any negligence, averring that the collision was caused entirely by the fault of the truck driver in operating the truck with defective brakes, and further that the plaintiff's son was guilty of contributory negligence in riding on the step or platform of the car in violation of the motorman's and the conductor's orders to ride inside the car.

The driver and owner of the truck failed to answer, and judgment by default was rendered against him in the sum of $5,091.50 by one of the judges of the civil district court on April 12, 1927. The case was then tried on its merits as against the railway company before a jury in another division of the same court, resulting on

November 25, 1930, in a verdict in favor of plaintiff for the sum of $10,000, three jurors dissenting. The railway company applied for a new trial, which was refused by the judge, who stated, in his written reasons for doing so, that the refusal was not to be construed as expressing an opinion of approval of the verdict, but, as the record was fully made up, he preferred to let the appellate court review it. The railway company then obtained a suspensive appeal; none of the parties having appealed from the judgment rendered by default.

The undisputed facts of the case may be stated as follows:

The plaintiff's minor son, aged fourteen years nine months, together with four other young men, were passengers on one of the defendant's street cars. The car was of the small type, having about eight or nine cross-seats and two side seats at each end. The brakes were operated by hand and also the doors of the vestibule. The doors on the left side of the car were closed, but the right front and the right rear door were open for the purpose of receiving and discharging passengers. The car was on Dumaine street, proceeding toward the lake, or City Park. Dumaine street is a paved thoroughfare 32 feet 5 inches in width, with double street car tracks in its center, the downtown tracks being used by cars going in the direction of the lake and the uptown tracks by those going toward the river. This street crosses at right angles Carrollton avenue, which is a boulevard with a neutral ground in the center 61 feet 1 inch in width. On both sides thereof are paved roadways, each 24 feet 5 inches wide, vehicles moving downtown using the riverside thoroughfare and those going toward Canal street occupying the lakeside roadway. The street car

had crossed the riverside thoroughfare and the neutral ground of Carrollton avenue, and was about in the center of the lakeside roadway of the avenue, when the Ford truck, proceeding toward Canal street, collided with it, the left front part of the truck striking the right front step of the car, demolishing the step. The impact derailed the street car, and its momentum caused it to cross the uptown tracks on Dumaine street, traverse the street, surmount a 6½-inch gutter curb, and finally come to rest 7½ feet upon the uptown sidewalk of Dumaine street. The truck stopped on Dumaine street on the street car tracks. Plaintiff's son, who was riding either on the right side of the front platform, or on the right front step, sustained three fractures of the right leg, and was removed to the Charity Hospital at once for attention.

It is first argued on behalf of plaintiff that the motorman failed to observe paragraph (a), subsection 7, article 1, section 1, of the traffic ordinance to the effect that Carrollton avenue is a right of way street, and that vehicles approaching Carrollton avenue from intersecting streets "shall, before crossing or turning into same, come to a full stop," and paragraph (c) subsection 7, article 1, section 1, of the traffic ordinance to the effect that at intersections of right of way streets with one another all vehicles approaching from the left shall give the right of way to vehicles approaching from the right. The street car was approaching from the left, and plaintiff contends that this also gave the motortruck the right of way under the latter provision of the ordinance.

Counsel for defendant railway company argues that the provisions of the traffic ordinance referred to do not apply to street cars, because a street car cannot be said

to be a vehicle within the meaning of the traffic ordinance, and that to so hold would be to seriously impede and hamper the movement of street cars and to inconvenience the public in the enjoyment of their use.

We do not believe it is necessary to consider whether or not the provisions of the ordinance apply to street cars, and therefore express no opinion on that point. It is sufficient to say that, if the ordinance is applicable, the truck had the right of way, and, if inapplicable, then the defendant has not offered in evidence any ordinance, franchise, or statute which gives it the right of way at the intersection, and therefore the case falls under the general law which grants to both motor vehicles and street cars equal rights at street crossings. The rule is stated in Huddy's Cyc. of Automobile Law, vol. 7-8, p. 143, as follows:

"At intersecting streets, the general rule is that a street car crossing in one direction and an automobile approaching at right angles have equal right to the use of the crossing. Each must exercise reasonable care to avoid a collision, and neither can heedlessly continue his course on the assumption that the other will give way."

Ruling Case Law, vol. 25, verbo "Street Railways," sec. 98, states the law in the following language:

"The preferential right generally accorded to street cars over other vehicles between street crossings does not, by the great weight of authority, prevail at street crossings, and the courts are generally agreed that the drivers of vehicles, pedestrians and street cars have equal rights at those crossings, and that neither has a superior right to the other, but that each must exercise ordinary care in crossing, and each is bound to use equal diligence to avoid collision."

See, also, Booth on "Street Railways" (2d Ed.) 490.

We next consider the question of the speed of the street car and the failure of the motorman to keep a proper lookout. In discussing this point, it must be borne in mind that the defendant company is a carrier for hire, and that the boy was injured while a passenger on its street car. Consequently, the company owed him the duty of using, not only ordinary care to avoid injuring him, but the highest degree of care commensurate with human foresight. Hopkins v. N. O. Ry. & Light Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362; Shally v. N. O. Public Service, Inc., 1 La. App. 770; Id., 159 La. 519, 105 So. 606; Lancon v. M. L. & T. R. R. & S. S. Co., 127 La. 1, 53 So. 365; LeBlanc v. Sweet, 107 La. 355, 31 So. 766, 90 Am. St. Rep. 303; Patton v. Pickles, 50 La. Ann. 857, 864, 24 So. 290; Brisolara v. Caddo Tr. & Warehouse Co., 13 La. App. 27, 127 So. 57.

Our courts have also held that, where a passenger brings suit against a carrier to recover damages for personal injuries, all he need prove is that he was a passenger on the car and that he was injured. It is then incumbent on the carrier, in order to relieve itself of liability, to prove either that it was not negligent, or that the passenger was contributorily negligent. Cusimano v. N. O. Public Service, Inc., 170 La. 95, 127 So. 376; Hopkins v. N. O. Ry. & Light Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362; LeBlanc v. Sweet, 107 La. 355, 31 So. 766, 90 Am. St. Rep. 303; Baptiste v. N. O. Public Service, Inc., 13 La. App. 625, 127 So. 655.

Plaintiff and his three companions, ranging in age from about 15 to 16 years, all testified that the street car did not stop at the intersection, but proceeded across

at a rapid rate of speed. Their testimony on this point is contradicted by the evidence of the motorman and the conductor, the driver of the truck, and a disinterested witness, Carriere, each of whom said that the street car did stop and that it then proceeded across the intersection at a speed of about 10 miles an hour. Lejeune, the driver of the truck, a witness for the railway company, stated that once the street car entered the intersection it never slowed down, but kept going at a speed which he estimated to be about 10 miles an hour. The motorman testified that he stopped at Carrollton avenue to permit passengers to alight; that, after they were discharged, the car started across the intersection (an unusually wide one), reaching a speed of about 10 miles an hour at the point of collision; that, when he started across the first roadway, he saw the truck coming down the street at a distance of about 300 feet from the intersection of Dumaine street; that, after seeing the truck at this distance his attention was directed to an automobile which came around the street car on the left-hand side and went out Dumaine street in the same direction as the street car; that he did not again see the truck until it was "right on me"; that he applied his brakes, but before they were effective the truck collided with his car; that he did not know how fast the truck was coming but says "It was coming fast, though—I judge—from the force that he hit the street car."

Mr. Byrd, another witness for the company, stated that the crossing was a dangerous one, and that all motormen were ordered by the company to come to a full stop, that they were further directed to cross street intersections cautiously, and that, as it was Mardi Gras Day, with heavy traffic and large crowds on the streets, the motormen were particularly instructed to be very careful on account of this enhanced danger.

The evidence shows that the collision took place about midway of the lake roadway of Carrollton avenue, and that the street car ran some 57 feet, with the front wheels of the car passing over a 6½-inch gutter curbing on the uptown lake corner of Dumaine street.

We do not believe it essential to a determination of the issues involved in the case to decide whether or not the street car stopped at Carrollton avenue. Even if the car did stop, there was sufficient opportunity for it to speed up before reaching the lake thoroughfare. The conflict in the testimony concerning the speed of the street car must be resolved in favor of plaintiff, for the action of the street car after the accident can be explained in no way consistent with moderate, much less cautious, crossing of the intersection.

Jackson, the motorman, admits that it was only after seeing the truck 15 or 20 feet away from him that he applied his brakes, and could not stop in time to avoid the collision. His failure to keep the truck under surveillance, knowing it must cross his path, was negligence, and inconsistent with the high degree of care due a passenger by a carrier. If it was necessary for Jackson to watch the automobile that passed to his left and impossible to keep both vehicles under observation at the same time, he should have either slowed down or stopped. His statement that, when he saw the truck 300 feet away, he believed he had sufficient time to cross before it would reach the intersection, and therefore gave it no further consideration, convicts him of carelessness, for, at that distance, he could not determine with any degree of accuracy

whether his conclusion to beat the truck across was prudent or otherwise. He should have kept a proper lookout. One look was not enough. Daull v. N. O. Ry. & Light Co., 147 La. 1012, 86 So. 477; Shields v. Fairchild, 130 La. 648, 58 So. 497; Marston et al. v. Shreveport Traction Co., 140 La. 18, 72 So. 794; Roder v. Legendre et al., 147 La. 295, 84 So. 787; Boylan v. N. O. Ry. & Light Co., 139 La. 185, 71 So. 360; Neville v. Postal Telegraph-Cable Co., 13 La. App. 76, 126 So. 720, 722; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194; LeBlanc v. Checker Cab Co., 8 La. App. 472; Gaspard v. Malochee et al., 16 La. App. 527, 133 So. 409.

Defendant's counsel, conceding arguendo the negligence of the motorman, nevertheless contends that his negligence in no wise contributed to the accident, the reponsibility for which is imputed exclusively to Lejeune, the driver of the motortruck, whose brakes, when applied, admittedly failed to function; in other words, the motorman had a right to assume that the truck was equipped with brakes which were in good order. We have no doubt that the failure of Lejeune to check the speed of the truck contributed to the accident, and the trial court has so found. Moreover, we are also of opinion that the truck was going faster than it should have been in approaching the intersection, a fact which would have been evident to Jackson, the motorman, if he had been keeping a proper lookout. But he paid no attention to the truck, which he knew was approaching the intersection and was at no time in a position to avoid the danger of collision, which its negligent operation might threaten. He did not rely upon the brakes functioning properly, and, for all he knew, the truck might have been out of control for a considerable distance from the intersection.

We can find no distinction in principle between this case and that of Daull v. N. O. Railway & Light Co., 147 La. 1012, 86 So. 477, 478, where the facts are strikingly similar. In that case Daull was driving his automobile on Nashville avenue and approaching Coliseum street, on which a street car was being operated. He did not see the street car until within 8 or 10 feet of the intersection of Coliseum street and Nashville avenue, when it was too late to stop his car. In endeavoring to beat the street car across, he collided with it and injured a guest in his automobile. Daull and Miss Cuneo, the guest, sued the street railway company, and the court at first held that neither plaintiff could recover on account of the negligence of Daull, the driver of the automobile, because, though the motorman was guilty of negligence, Daull was also at fault, and his negligence contributed proximately to the result, in that he failed to keep a proper lookout for the street car, not having again looked in its direction—after failing to see it 150 feet away—until within 8 or 10 feet of the crossing. The court held that the accident could have been avoided if either the driver of the automobile or the motorman had exercised reasonable care. On rehearing Miss Cuneo was allowed to recover because she "was a guest in the automobile, not charged with its management, and therefore not participating in the negligence of the driver." The position of the motorman in the case at bar is the same as that of Daull, the driver of the automobile, in the Daull case, only in the instant case the motorman did see the motortruck when 300 feet distant and failed to look for it again until it was "right on me," or within 15 or 20 feet, too late to avoid the accident. The holding in the Daull case appears to us conclusive and controlling here.

However, the other authorities mentioned by us are also in point. For example, in the case of Neville v. Postal Tel.-Cable Co., which was a suit by a pedestrian for damages for injuries sustained as a result of being run into by a motorcycle, this court held that the plaintiff could not recover because, after starting to cross the street and observing the motorcycle about 150 feet distant, she took no further notice of it, and kept her eyes in front of her without taking another glance in the direction from which the motorcycle was approaching. We said in that case:

"A pedestrian must be expected to act with ordinary care and prudence, and when stepping into a street and seeing an automobile, it is not sufficient to thereafter ignore its presence and depend upon the accuracy of one's judgment in estimating its speed and distance, without assuming the risk involved."

See, also, Roder v. Legendre et al., 147 La. 295, 84 So. 787.

We now pass to a consideration of the defendant's plea of contributory negligence. Defendant contends that the boy was on the step of the car in violation of instructions to ride inside, while it is the contention of plaintiff that the street car was crowded, and that the boy was on the front platform owing to the crowded condition of the car, and that it was not negligence for him to be there under those circumstances. The motorman, the conductor, Lejeune, the truck driver, and Carriere were the only witnesses to the accident produced by the defendant. The conductor admits that he did not see where the boy was at the time he was injured. Carriere was not asked if he observed the boy on the step of the car. The motorman and Lejeune are the only witnesses who testified that he was on the step. Plaintiff and his three boy companions testified that he was on the right side of the front platform, adjacent to the vestibule door, and that, as the truck struck the car, the impact caused him to lose his balance and his right leg protruded from the platform and was injured between the car and the truck. They further testified that the street car was crowded, necessitating passengers standing on the front platform. Their testimony in this respect is also in conflict with that of the motorman and conductor and the testimony of three other witnesses, one of whom had gotten off the car several blocks before the accident and two of whom had gotten off two blocks before the accident. These three witnesses testified that there was room inside of the car for passengers. The defendant witness Lejeune did not state whether the car was crowded or not. The defendant witness Carriere, who was entirely disinterested, testified that he saw people standing in the aisle inside the car and on both the front and the rear platforms, thereby corroborating the testimony of plaintiff's son and his witnesses. It would appear to us that, if the boy had been standing on the step, the evidence having established that that step was completely demolished by the terrific impact, his injuries would have been much greater.

We are of the opinion that the preponderance of the evidence shows that the street car was crowded, and that the boy was on the front platform at the time of the accident. Our courts have uniformly held that a passenger cannot be charged with contributory negligence in merely being upon the platform of a street car when he is compelled to stand there because of the crowded condition of the car. McMahon v. N. O. Ry. & Light Co., 127 La. 544, 53 So. 857, 32 L. R. A. (N. S.) 346; Lancon v. M. L. & T. R. R. & S. S. Co., 127 La. 1,

53 So. 365; Landix v. N. O. Ry. & Light Co., 140 La. 529, 73 So. 668; Shally v. N. O. Public Service, Inc., 1 La. App. 770, 1d., 159 La. 519, 105 So. 606; Matthews v. N. O. Public Service, Inc., 8 La. App. 463; Basey v. L. R. & N. Co., 137 La. 451, 68 So. 824, L. R. A. 1915E, 964; Sibley v. Railroad, 49 La. Ann. 588, 21 So. 850.

The plea of contributory negligence must therefore fail.

In view of the above findings, it is unnecessary to pass upon the question of the closing of the doors to the vestibule of the street car.

As to the quantum, the plaintiff's son suffered a fracture of the femur and a compound fracture of the tibia and fibula of the right leg. A surgical operation under a general anæsthetic was performed on the thigh and fractured femur treated by open reduction; the broken bones being brought together by steel plates and fastened with screws. The compound fractures of the tibia and fibula were treated by skeletal traction, i. e., pulling the bones in place with instruments called tongs, and, after setting them, placing the leg in a plaster of Paris cast to maintain position. The whole operation required about an hour. The boy was in the hospital from February 15 to June 15, 1926. He was confined to his bed and home, off and on, for about a year, during which period of time he was frequently treated at the hospital, and he was required to use crutches for 2 years. The injured leg is five-eighths of an inch shorter than the uninjured one, causing a tilting of the pelvis and a compensatory curvature of the spine, which renders him more susceptible to sacroiliac strain in doing laborious work than an ordinary person would be, but his doctor states that the injury would not render him incapable of doing laborious work. The arch of his right foot is three-eighths of an inch smaller in circumference than the left one. The impairment in flexion of the knee is 33⅓ per cent. He has a permanent 10-inch scar on the anterior surface of the thigh caused from the operation, and on the lower leg the scarred tissue caused by the protruding bones is sensitive and more susceptible to irritation than ordinary flesh. The duration and full extent of his disability is problematical, his doctor testifying that, because of his youthfulness, the healing process of nature would lessen the gravity of the injury, and, further, that a very fine recovery had been accomplished.

At the time of the accident the boy was fourteen years and nine months of age, and was earning $6 a week.

In the light of the jurisprudence of this state, we believe the sum of $10,000 awarded plaintiff is excessive, and should be reduced to the sum of $6,000. Herbert v. Kingston Lumber Co., 126 La. 775, 52 So. 1021; White v. Nutriline Milling Co., 133 La. 870, 63 So. 385; Adams v. Bolinger, 141 La. 493, 75 So. 218; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194.

The amount of $91.50 expended by the father is also allowed.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by reducing it from the sum of $10,000 to the sum of $6,091.50, with legal interest from judicial demand until paid, and, as thus amended, the judgment is affirmed.

JANVIER, J. (concurring). The important question is whether the inattention of the motorman contributed to the subsequent catastrophe because, if that inat-

tention had no causal connection with the collision, if, regardless of that carelessness, the accident would nevertheless have happened, it could not be said that the fault of the motorman was the proximate cause thereof, and it would follow that the carrier could not be held liable.

That the motorman was inattentive there can be no doubt, since he, having seen the autotruck approaching the street car track at right angles, and about 300 feet away, should not have allowed it to traverse practically all of the intervening space without again directing his attention toward it. His statement shows that he did not do this.

Had he looked, the excessive speed of the truck would have indicated to him that, whatever may have been the intention of the chauffeur thereof, a complete stop could not be effected. It would have been the duty of the motorman in such an emergency, regardless of whether or not the right of way ordinance favored his vehicle, to bring that vehicle to a stop, or to reduce its speed sufficiently to prevent a collision. That the speed of the truck was excessive is shown by the fact that it knocked the street car from the tracks and also from the resulting damage to both vehicles.

Had the truck been approaching at a normal speed, and had the chauffeur indicated either by signal or by other action that it was his purpose to stop and accord to the street car the right of way, then the motorman's action in permitting the street car to continue on its course without slackening its speed would not have been negligence. The sole cause would have been the defective brakes of the truck.

Thus, had that been the situation, the failure of the motorman to again glance toward the approaching truck, although it would have been negligence, would have been of no importance, because, had he glanced toward it, he would have seen a truck approaching at a normal speed and giving evidence of intention of its driver to stop, and the dictates of prudence would not have required the street car to stop or reduce its speed.

Here, however, as I have said, a glance would have called his attention to the speed of the truck and would have indicated to him the necessity for stopping the street car.

I concur in the decree.

———

## ON APPLICATION FOR REHEARING

PER CURIAM. Counsel for defendant insists that we were in error in holding that the boy, on whose behalf this suit was brought, was not contributorily negligent in riding on the front platform of defendant's street car at the time of the accident.

Conceding that the boy was negligent, a violent assumption, nevertheless his presence on the platform, even though negligent, had no causal connection with the accident, which we have found to be due entirely to the joint negligence of the motorman of the street car and the truck driver. Stout v. Lewis, 11 La. App. 503, 123 So. 346.

Plaintiff has asked for an increase in the award, and, after due consideration and for the reasons expressed in our original opinion, we have concluded not to disturb the original amount allowed.

For these reasons both applications for rehearing are denied.