JULIUS EVANS, Appellant, v. FERDI-
NAND HOLLANDER

(June 22, 1925, Opinion and Decree)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Landlord and Tenant —Par. 65, 66.**
The fact that the balustrade was defective in its construction or decayed is proved by its giving way when plaintiff leaned against it.

2. **Louisiana Digest—Landlord and Tenant —Par. 65, 66.**
A lessor is bound to know whether the building he leases is safe for the purpose for which he leases it and is answerable in damages to a lessee who is injured by a balustrade which has fallen for defect in its original construction or for want of repairs.

Appeal from Civil District Court. Hon. Wm. H. Byrnes, Judge.

The plaintiff, lessee of defendant, was injured by a fallen gallery and brought suit.

There was judgment dismissing plaintiff's demands as in case of non-suit. Plaintiff appealed.

Judgment reversed.

J. A. Woodville, Warren Woodville, attorneys for plaintiff and appellant.

Scott E. Beer, attorney for defendant and appellee.

CLAIBORNE, J. The plaintiff, lessee of defendant, was injured by a fallen gallery and brought suit.

He alleged that he leased from the defendant the property No. 2900 S. Rampart street, which is a two-story building; that on June 21, 1923, while leaning against the balustrade or railing of the front second story gallery it broke and fell and precipitated him to the sidewalk, a distance of about 15 feet; that the breaking of said balustrade was due to its decayed condition; that he was not aware of its condition nor that it was not safe to lean against it; that in falling he struck his head on the sidewalk and was made unconscious; that he was taken to the Charity Hospital and subsequently treated by his own physician for internal injuries, a lacerated scalp, a contusion of the brain, injuries to his frontal bone, and sprains and contusions of his back and left side.

He claims for the nervous and mental shock _____$ 500.00
Physical pain _____ 1000.00
Loss of wages during his illness_____ 300.00
Permanent impairment of his health 1500.00
A scar upon his head _____ 500.00

Making in all _____$3800.00

The defendant admitted that he was the owner of the property, 2900 S. Rampart, and that the plaintiff was his lessee; that the plaintiff fell from the gallery of said premises and was slightly injured; but he denies that the balustrade of said gallery fell because of any decay or defect, or because plaintiff was leaning against it; but defendant avers, on the contrary, that the balustrade was in a safe and sound condition but had been made unsafe by the action of the plaintiff in removing the balustrade in order to move in some furniture, and replacing the balustrade in an unsafe manner without defendant's knowledge; that in addition to the above the plaintiff had rushed against the balustrade to throw a bottle at some boys and had thrown all his weight against the balustrade; that the combination of these two acts caused the balustrade to fall and not its decayed or defective condition.

There was judgment dismissing plaintiff's demand as in case of non-suit.

Plaintiff appealed.

The learned judge of the District Court gave two reasons for his judgment. The

first was that he was "yet uninformed as to the real condition of the railing at the time of the accident. If the railing was in bad condition the plaintiff could have established it with clear positive evidence, etc."

If the balustrade fell while being used in the manner intended by its erection it was of no importance, what the evidence would have shown as to its condition unknown to the lessee. The lessor warranted the solidity of the balustrade for all legitimate purposes.

If it fell it was a presumption, juris et de jure, that the balustrade was not such a one as the law required the lessor to furnish his lessee under Articles C. C. 2692-2693, 1695. Res ipsa loquitur. Breen vs. Walters, 150 La. 583, 91 South. 50.

A few of the late decisions of our Supreme Court will suffice to support this proposition.

"The lessor (lessee) was not called upon to know, under the circumstances, what the condition of the sills and joists covered by the flooring was nor the condition of the flooring."

"There is a conflict of testimony as to what the precise cause of the giving way of the flooring was. Whatever may have been the cause, the fact itself remains that the flooring did give way under Mrs. Beecher's weight, and should not and would not have done so had the flooring and joists been in proper condition." Schoppel vs. Daly, 112 La. 213, 36 South. 322.

"The owner is bound to know whether his building is safe for the purposes for which he rents it or authorizes its use, or is rotten or unsafe, and is answerable in damages, whether he knows the condition or not, to those who, being lawfully therein, are injured by reason of its defects, whether of original construction or caused by failure to make proper repairs." C. C. 2695, Knapp vs. Guerin, 144 La. 881, 81 South. 302; Allain vs. Frigola, 140 La. 982, 74 South. 404; Badie vs. Columbia Brewing Co., 142 La. 860, 77 South. 768; Ciaccio vs. Carbajal, 145 La. 881, 83 South. 73; Breen vs. Walters, 150 La. 578, 91 South. 50; Thompson vs. Commercial National Bank, 156 La. 480, 100 South. 688.

"A lessor is not relieved of liability from the fact that he and a carpenter made an inspection and saw nothing needing repairs." Chaffe & Sons vs. McGehee & Co., 38 La. Ann. 280; Tucker vs. Illinois Central Railway Ca., 42 La. Ann. 114, 7 South. 124; Schoppel vs. Daly, 112 La. 201, 36 South. 322; Boutte vs. New Orleans Terminal Co., 139 La. 956, 73 South. 513; Badie vs. Columbia Brewing Co., 142 La. 860, 77 South. 768; Thomson vs. Cooke, 147 La. 922, 86 South. 332.

2nd. The allegation that the plaintiff had removed the balustrade was not established with sufficient certainty.

This was an appreciation of evidence which should have been decided for the defendant or for the plaintiff.

The only question is, did the plaintiff lessee at any time remove the balustrade for the purpose of lifting up the armoir into the house and replace it in an unsafe condition or weaken it in any manner?

There is some evidence, more or less reliable, that the balustrade appeared to be in bad condition. But the plaintiff testifies as follows:

"Q. Did you know that the banisters were rotten?
"A. No, sir; I would not have leaned on them if I had known it was rotten."

There is no evidence that the plaintiff knew or suspected it was rotten.

That it was rotten or insecure is a self-evident proposition since it gave way when plaintiff leaned against it. Res ipsa loquitur. The defendant contends that the plaintiff weighs 190 pounds and that it was negligence on his part to throw his weight against the balustrade. There are others who weigh as much. A balustrade is made to lean against and it is not improper for even a very heavy man to use it for that purpose.

The defendant argues with much energy that the plaintiff rushed against it. The evidence is the other way. But even had

he rushed, it was not negligence on his part so to do. There is much evidence that plaintiff did not have a bottle in his hands and that he did not throw any.

The defendant's answer that the plaintiff took down a section of the balustrade to introduce an old-time French double-door armoire upstairs when he moved in, and replaced it carelessly and thus weakened it, is not established. The armoire was an old family relic, 4 feet wide, 8 feet high, and 2 feet deep, with the cornice missing.

Only one witness is examined on that subject; his name is Joe Allen. He says he was passing in front of plaintiff's place while he was moving in; "he was drawing some stuff up with a rope; it seemed they had one of the sections of the banister taken off; he cannot say what furniture he was moving up; he does not think it was anything as large as an armoir"; of course, the plaintiff could not pull up an old-style French armoire with a rope by himself.

This witness ran a gambling game up to a couple of months ago.

There is no other evidence to support the defendant's theory. On the other hand, several witnesses deny that the plaintiff moved any part of his furniture over the balustrade or removed any part of it.

They say that plaintiff took the armoir apart and carried it up the stairs. They are Fournet, plaintiff himself, and his daughter.

This fixes defendant's responsibility.

The plaintiff is a colored man, 49 years old; he is a mattress maker; as a result of his fall he was eight days in the Charity Hospital; after he came out he went to the clinic two weeks; after that he was treated by his society doctor about two months.

Dr. Gallo says he had a lacerated wound of the scalp; the treatment consisted of surgical dressing, iodine and bandage. After that he was well as far as the wound was concerned. He might have had pain from it after that; I don't know. I don't think anything serious about it."

The plaintiff lost much time owing to his incapacity to work. But there is no evidence of his average earnings, and even those are speculative. There is no permanent injury nor any scar.

We think four hundred dollars will compensate him for his loss of earnings and suffering.

It is therefore ordered that the judgment herein be reversed and set aside; and it is now ordered that the defendant, Ferdinand Hollander be condemned to pay to the plaintiff, Julius Evans, four hundred dollars, with five per cent per annum interest from October 9, 1923, till paid, and all costs of suit.