## BROWN v. PONS. *
### No. 14568.

Court of Appeal of Louisiana. Orleans.

April 24, 1933.

Maurice R. Woulfe and Clarence E. Strauch, both of New Orleans, for appellant.

Pomes & McCabe, of New Orleans, for appellee.

JANVIER, Judge.

Defendant is the owner of a tenement building. Plaintiff subleased from one of the tenants on the third floor the right to sleep in a portion of the room leased by that tenant. On that floor there were no water pipes carrying running water, nor was there any slop sink or other plumbing fixture to receive refuse water, and plaintiff alleges that the various tenants who occupied rooms on that floor were in the habit of disposing of such water by throwing it over the rail of the gallery to the ground below.

While thus disposing of the water in a

*Rehearing denied May 22, 1933.

large tub, plaintiff threw his own weight, as well as that of the tub and contents, against the rail. The rail broke and he fell to the ground nineteen feet below.

He now seeks redress for the injuries sustained, contending that the fall was due to the defective condition of the rail and asserting that the owner of the building is liable for the injuries which resulted.

Defendant, after first denying that plaintiff was a subtenant, or was lawfully upon the premises, asserted that the rail was not defective, but was amply strong for all reasonably to be expected requirements, and that the breaking thereof was not due to its own inherent weakness, but rather to the fact that plaintiff subjected it to a strain unnecessarily great and exerted against it a force much in excess of any which a landlord has any reason to expect will be placed against such a rail.

■ That plaintiff leased from another tenant the right to use for sleeping purposes a portion of the room of the latter is no longer disputed, and it is, therefore, now · conceded that between plaintiff and defendant there existed the legal relationship of landlord and tenant at least to such extent as to render the landlord liable for such injuries as the tenant may have sustained as the result of defects in the premises. In Klein v. Young, 163 La. 59, 111 So. 495, 496, the Supreme Court of Louisiana approved the doctrine that: " * * * The obligation imposed upon the owner of a building to answer in damages to a person injured by neglect of the owner to keep his building in repair arises ex delicto, and that the right of action, being in tort, is in favor of one who is injured while lawfully on the premises or inside of the building. * * *"

■ It follows that, if the rail gave way while it was being used for a purpose for which such rails are customarily used and plaintiff himself was not contributorily negligent in relying upon a manifestly defective rail, then the owner of the premises is liable, because "the lessor warranted the solidity of the balustrade for all legitimate purposes." Evans v. Hollander, 2 La. App. 409.

■ But the warranty which is by law written into every contract of lease does not go so far as to render the lessor liable for all injuries sustained, and his responsibility cannot be extended so as to include damages which result from abnormal and unexpected use of such portions of his building as rails, stairways, galleries, et cetera, which, although they may be entirely safe if used in the manner in which the lessor is justified in assuming that they will be used, are entirely unsafe if subjected to unreasonable and extraordinary stress or strain. In Evans v. Hollander, supra, relied on by plaintiff, we

find that this court, in laying down a rule which should be applied in determining whether a lessor is liable, said that recovery should be limited to the cases in which the allegedly defective portion of the property broke "while being used in the manner intended by its erection." In Glain v. Sparandeo, 119 La. 339, 44 So. 120, 121, the Supreme Court considered a case in which a tenant received injuries when he fell to the ground as the result of the breaking of a gallery rail while it was being subjected to abnormal strain. The court, in holding that there was no liability in the landlord, said: "The use to which the railing of the gallery was subjected was not the ordinary use for which the lessor is presumed to have warranted it, and, whilst persons, in moving heavy articles, may choose to rely on such supports, they do so at their own risk when the customary and safer way is open to them."

■ From the record before us it appears that the tenants had been repeatedly told not to throw water over the gallery rail, but, instead, to carry it to the second floor and there to deposit it in a receptacle provided for that purpose. It thus appears that, to use the words of the Supreme Court, "the customary and safer way" was "open to them."

While plaintiff and some of the witnesses testified that the tenants were in the habit of throwing the water over the rail, we believe that the preponderance of the evidence shows that, if they did this, they did so in violation of the repeated orders of the landlord.

But we do not base our view that defendant is not liable on the fact that there was a safer way in which the water could have been deposited, but on the fact that, in throwing the water over the balustrade, plaintiff, not only leaned his body against the top rail, but, with the tub in his hands, reached "as far as you could put your hands out" and then attempted to pitch the water so that it could reach a drain in the ground nearly forty feet away from the base of the building. He himself weighed 174 pounds and the tub and contents added more than 30 pounds. We feel, as did the district judge, that, although the rail was strong enough to keep him from falling so long as he merely leaned against it, it was not contemplated that it was to be subjected to the sudden strain which was placed against it when, added to his own weight, he suddenly swung the tub of water with a sidewise motion of sufficient force to catapult the water through the air a horizontal distance of some thirty or more feet, while falling a vertical distance of only 19 feet.

The district judge was correct when he said:

"I am, therefore, satisfied that when this plaintiff took a tub of water with approximately twenty-five pounds of water in it, and five or six pounds of tub, making over thirty pounds of weight, with the weight of himself, which he says is one hundred and seventy-four pounds, and leaned over that railing and threw his weight and the weight of the tub and water against that railing, a strain was put on it which was never intended to be put on it-and should never have been put on it and the evidence is, the posts and railing itself was of sound wood and this heavy impact against the railing was to cause the nails which held either side to pull out.

"The allegation that the nails were rotten to my mind was not borne out by the evidence. The preponderance of evidence is, the nails were pulled out by the excessive weight put on the railing and the same nails were straightened out and put back."

. That the rail was made of sound wood, and that there were sufficient nails to hold it in place, appears from the evidence, which is to the effect that the same rail was later replaced, and that the same nails were straightened out and used and no others were necessary.

That the same nails were used is denied by one of the witnesses, who testified on plaintiff's behalf, but we are disinclined to accept his statement in preference to evidence to the contrary. This witness admitted that he was interested in the outcome of the case. When asked if plaintiff had promised him anything in the event of a favorable outcome, he said: "He (plaintiff) said if I did what was right and he got hold of anything, he would give me a part of it."

We conclude that, although the rail, had it been more securely nailed and had it thus been able to withstand the additional strain, was nevertheless sufficiently strong to withstand any normal pressure which might be reasonably expected to be exerted against it, and that, therefore, the proximate cause of the fall was not the condition of the rail, but was the fact that plaintiff subjected it to the extraordinary force described above. Consequently the judgment dismissing the suit was correct.

The judgment appealed from is affirmed at the cost of appellant.

Affirmed.

WESTERFIELD, Judge (dissenting).

The fact that the railing gave way under the slight lateral pressure of the 200 pounds of man and water supported by the flooring of the gallery indicates to my mind that it was unsafe and unfit for the use for which it was intended. I, therefore, respectfully dissent.