**WILLIS v. CAHN et al.***

No. 5119.

Court of Appeal of Louisiana. Second Circuit.

Dec. 13, 1935.

Joseph H. Levy, of Shreveport, for appellants.

Chris Barnette, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff was seriously injured when the balustrade of the porch of a tenement house (420 Caddo street) in the city of Shreveport, on which he was leaning, gave way, precipitating him bodily to the ground, a distance of six feet below the floor level. He brings this suit against defendants, owners of the property, to recover a large amount in damages on account of his injuries, which are alleged to be permanent in character, totally disabling him for any sort of work. He alleges, and we think has proven, that he went to the house,. occupied by one Levi Thomas as lessee, on the afternoon of Saturday, March 3, 1934, to deliver to Thomas some money which his employer had sent to him; that he knocked on the front door, or rang the door bell, and called Thomas, and, hearing no response, walked to the end of the porch to look down the side of the house in the hope of seeing him; that in following out this purpose, he leaned forward with his hands on the balustrade in order to look around and down the side of the house, and while doing this the balustrade suddenly collapsed from rottenness and decay, and he fell with it head-on to the ground. He had a legal right to be on the porch at the time. He avers that said balustrade was insecurely nailed to the corner post and the wall of the building; that its decayed, unsafe, and dangerous condition was not apparent to him; and that he had no knowledge of its real condition. He further alleges that defendants were negligent in permitting said balustrade to decay and become unsafe for persons lawfully on the premises, and avers, as a conclusion, that they are responsible to him in damages for the pain and suffering endured and injury sustained by him because of their negligence.

Defendants admit ownership of the building and that they had leased it to Levi Thomas, but, for lack of information, other allegations of the petition are denied. They affirmatively plead that they did not know that the balustrade need repairing and did not know plaintiff was injured by its falling for some two months thereafter; and, after investigating the facts of the accident, have this to say: That if plaintiff had not negligently and in an abnormal manner used said balustrade it would not have fallen and he would not have been injured; that in so using the balustrade he

was guilty of gross negligence. In the alternative, should it be found and held that said balustrade was in a defective condition, and under the law they were negligent in not keeping it in a better state of repair, then, and in that event, the contributory negligence of plaintiff, in the following respects, is pleaded in bar of his right to recover:

(1) That on the afternoon when the accident occurred, he was intoxicated and drunk, and while in that condition staggered up the steps of the leased premises, and, spying a colored girl in the adjoining yard, he immediately rushed to the balustrade on that side of the house to engage said girl in conversation, and "at the same time throwing himself with a reckless, drunken force against the balustrade, grasping the top rail with both hands, and then, after bringing his torso and hips to a position of almost right angles, threw his body and entire weight across said top rail with so much force as to cause the balustrade to give way and break, and precipitate him to the ground"; which negligence, they specially plead, was the proximate cause of the accident, and not the negligence, if any, of defendants.

(2) That the decayed condition of the balustrade was plainly visible and apparent to plaintiff or any one else; that there were no coverings or obstructions to prevent him observing its true condition if he had tried to do so; and that he often visited the place and had ample opportunity to observe the defective and decayed condition of the balustrade.

From a judgment for plaintiff for $7,-076.85, defendants appeal.

## Opinion.

■ We are satisfied from a close study of the testimony that plaintiff was not intoxicated at the time he was injured. Several members of his race gave testimony indicating that he was drunk at the time, and the woman next door is positive he was in this condition, and says he offered her a drink from a bottle he had in his hand when the balustrade fell; but he positively denies this, and swears that he was not even drinking at the time. In this he is measurably corroborated by two or three negro men who hastened to his relief. Two white men, in the ambulance which hurried him to a sanitarium, say he was sober, and Dr. Mason, who first examined and administered to him at the sanitarium, is positive he was then sober. He took a statement from plaintiff at the time. Plaintiff says he had no liquor with him, but did have a can containing some beef. Such a can was found on the ground after the accident, but no bottle of liquor was found.

We are also convinced that the balustrade did not give way from any unusual pressure against it by plaintiff. Only two persons saw the accident. They were plaintiff and the negro woman on the porch or in the yard of the adjoining cottage. Plaintiff says he "didn't much more than touch it, went to lean over, had my hand like that (indicating), leaned over to call Levi," and the balustrade gave way before he actually called him. The negro woman (Nellie Haynes) states she never knew plaintiff before this occasion, but had seen him on the four previous Saturdays. However, later on in her testimony she states that on each of the previous four Saturdays she was with plaintiff, drank with him and his friends in the home of Levi Thomas. Thomas positively denies this woman's statement, and says so far as he could recall she had never been in his home at 420 Caddo street, and his wife corroborates his testimony in this respect. The testimony of this Haynes woman does not impress us as being entirely fair and unbiased. However, her evidence does not support defendants' contention that plaintiff threw his weight unduly against the balustrade when it fell. In describing the accident, she says:

"A. When he leaned on the porch, he asked me if the people were at home, and I says, 'I do not know; if they are they are in the back.' He looked around like that (illustrating) and I kept on sweeping. He leaned on the porch and says, 'You want a drink?', and I says, 'I do when I get through sweeping,' and he says, 'Drink now', and he leaned on the balustrade like this (illustrating) and then he took one hand off of the balustrade and reached in his pocket and pulled out a bottle, and then is when he fell.

"Q. When he put his weight on the balustrade, show how he did that? A. He had both hands on the balustrade, like this (illustrating) and when he asked me if I wanted a drink, then he put his weight like this (illustrating) and got the bottle with the other hand, and that is when he fell."

This testimony shows, if true, that plaintiff at first rested both hands on the bal-

ustrade, and then only one as he reached for the alleged bottle of liquor. It negatives the contention that he lunged forward after resting his hands thereon. The top rail of the balustrade was 26 inches above the floor. Plaintiff is 5 feet, 9 inches tall. Therefore, it was but natural, as he states, for him to have rested both hands on the top rail as he prepared to lean forward to call or look for Thomas who was in bed in a room towards the rear of the house. In view of these conclusions, whether plaintiff was intoxicated to any extent becomes an unimportant factor in the case.

██ It is not seriously denied that the balustrade was not in a good condition. The ends of the rails, originally toenailed to the porch post, had decayed so much that the nails, also badly rusted, barely held them to the post. The balustrade was insecurely held in place by the rusted nails, and, when plaintiff leaned forward thereon, gave way with the result mentioned. There were several spools out of the balustrade, but its general appearance did not indicate its decayed and unsafe condition. Plaintiff was not required to have closely inspected it before leaning on it. Wise v. Lavigne, 138 La. 218, 70 So. 103. He was not familiar with it. The liability of defendants, in view of these conclusions, is beyond question. To fix such liability, it is not necessary that the lessors have actual knowledge of the defects or unsafe condition of the leased property. Knowledge is imputed to them. The following articles of the Civil Code bear upon these questions:

"670. Owner of building—Duty to repair.—Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."

"2322. Building—Damage occasioned by ruin.—The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

"2692. Lessor's implied obligations.—The lessor is bound from the very nature of the contract, and without any clause to that effect: * * *

"2. To maintain the thing in a condition such as to serve for the use for which it is hired."

"2693. Delivery in good condition—Duty to repair.—The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make as hereafter directed."

"2695. Guaranty against vices and defects.—The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."

"2717. Repairs required by unforeseen events or decay—Lessor's duty to make.— The expenses of the repairs, which unforeseen events or decay may render necessary, must be supported by the lessor, though such repairs be of the nature of those which are usually done by the lessee."

Article 2716 of the Civil Code names the repairs which the lessee is legally bound to make, and repairing of porches and balustrades is not one of these. Article 2717 definitely states that expense of repairs rendered necessary by unforeseen events or decay must be supported by the landlord; and article 2695 commits the landlord to definite responsibility for damages arising from defects in the leased premises whether or not he had actual knowledge of such defects, and whether they existed at the time of making lease or arose thereafter. This was held in the early case of Anne Perrett v. Dupré et al., 3 Rob. 52, and has not since been departed from, but often reaffirmed. The warranty to the lessee and legal liability of the lessor provided for in the above-quoted articles of the Code have been extended to the guests of the lessee in many cases.

In Ciaccio v. Carbajal, 145 La. 869, 83 So. 73, it was held: "The lease of a residence contemplates the housing therein of the family of the lessee, the entertainment of his guests, and the entry therein of all persons whose relations with the occu-

pants, whether of business or otherwise, require, or reasonably call for such entry." Syllabus No. 1.

And in Thomson et al. v. Cooke et al., 147 La. 922, 86 So. 332, the court said: "A guest of a lessee, injured by reason of a defect in a step, stands in the shoes of the lessee for invoking the benefit of Civ. Code, art. 2695, under which the lessor guarantees the lessee against all vices and defects in building." Syllabus No. 2.

The case of Evans v. Hollander, 2 La. App. 409, is in point. The syllabus reads: "The fact that the balustrade was defective in its construction or decayed is proved by its giving way when plaintiff leaned against it." Syllabus No. 1.

In Klein v. Young et ux., 163 La. 59, 111 So. 495, the court reviews our jurisprudence touching these questions, and cites a multitude of cases bearing thereon. All of these, and others, have been cited by energetic counsel for plaintiff. In the interest of brevity, we abstain from further citations.

Appellants mainly rely upon Brown v. Pons (La.App.) 147 So. 560, in support of their plea of contributory negligence. In that case the court found and held that the subtenant made an abnormal use of the gallery rail of the second floor of the building, and denied recovery. The testimony disclosed that plaintiff, in disposing of water in a large tub, threw his weight violently against the rail. It broke, and he fell to the ground below and was injured. The facts of that case and of the present one are wholly different. Plaintiff here was not making an improper or abnormal use of the balustrade, but on the contrary the use he was making of it was in keeping with a purpose for which it was constructed.

■ Defendants carried the burden to establish their plea of contributory negligence. They have not done so.

### Quantum of Damages.

■ Plaintiff is a colored man, and when injured was 40 years of age, and in good physical condition. He earned a living by manual labor. The fall on the head caused a concussion of the spinal cord which produced immediate paralysis involving the four extremities. He remained in a sanitarium for one week. He was then carried to his home, and his condition either growing worse, or not improving, he was carried to the Charity Hospital in Shreveport, on March 14, where he remained until June 6th. During this period his condition improved to the extent that he could use his left leg and arm some. He has not been able to work at all since being hurt. At date of trial all extremities were still affected; but he could move about some with aid of crutches. The paralytic condition was worse on the right side.

The doctors who examined plaintiff concur in the opinion that he will continue to improve for several months, but none think he will ever attain to good physical condition again. It is practically certain he will be materially, if not totally, disabled for life. It is humanly and medically impossible to accurately forecast what the final result will be. Contingencies affect the case which will have influence upon its final outcome. In view of plaintiff's financial condition and station in life, it is not to be expected that he will receive the same character of medical treatment and attention as one more fortunately situated would receive.

In most cases involving demand for damages on account of personal injuries, fixing the amount thereof is not without difficulty. Ofttimes an arbitrary amount is arrived at. In the present case, the difficulty is increased because of the nature of the injury and uncertainty as to the extent improvement will finally reach. The doctors themselves are most uncertain, but, as said before, none believes plaintiff will ever be able to perform heavy manual labor again. This is the only line of work he could perform. The record does not disclose that he has suffered to any great extent. A state of paralysis is not generally accompanied by pain.

Appellants argue that this suit is premature because at this time the duration of plaintiff's injuries cannot be definitely determined. The point is not well taken. There must be an end to every litigation; and if suits for damages for personal injuries were held in abeyance on account of there being some degree of uncertainty as to the final outcome of such injuries, the extent of disability, etc., the dockets of the courts would become clogged from deferred cases, and the ends of justice frustrated.

All things considered, we are of the opinion the judgment appealed from is excessive to the amount of $2,000; and, for

**456**

the reasons assigned, said judgment is reduced to $5,076.85, and, as thus amended, said judgment is affirmed, with costs.