CHASEZ, Judge.
Defendants, Jack L. Hearn and his wife are the owners of a building at 1555 N. Derbigny Street, New Orleans. Plaintiffs, William M. Wilson and his wife allege that they, as tenants, occupied an upstairs apart- ' ment in the said building. Mrs. Wilson avers that on January 26, 1957, because of ' the defective condition of the bannister of her porch, she fell to the ground below ' when the bannister rail gave way as she was leaning against it. She claims that she did not know, or have reason to suspect, ’ that the bannister was in any way dangerous or incapable of ■ supporting her - weight, which she alleged was a little over . 200 pounds. It is her contention that the accident resulted solely from the vice which - existed in the leased premises, for ■ which yice she maintains defendants, as owners . and lessors are liable. She claims she suffered six fractured ribs and hemo pneumothorax. In her petition she prayed • for judgment in the sum of $26,000.00.
Defendants answered denying that the bannister was in any way defective and that “plaintiff was merely leaning on the bannister at the time the bannister rail gave, but that when said bannister rail did give way, it was due to plaintiff’s intoxicated condition, which caused her to stagger and strike said bannister rail with such force, and being a very corpulent person of over two hundred pounds, caused said bannister rail to give way.” Defendants allege that they are free of fault and if damages were sustained by plaintiff Mildred Wilson “it was solely through her contributory negligence.”
From a judgment for defendants dismissing plaintiffs’ suit, plaintiffs have appealed.
The trial judge rested his judgment on-“the credibility of the witnesses, plaintiff and defendants as to how the plaintiff, Mrs. Wilson fell.” He accepted ’defendant Hearn’s version of the accident as the correct one. According to Hearn, Mildred Wilson told him she had been drinking all day as she was depressed because her brother was in Angola. Hearn stated that after their conversation was ended, she left the railing and then staggered back hitting the railing causing it to come loose from the supports and then fell into the yard. The testimony of the investigating police officers that Mrs. Wilson had been drinking substantiated Hearn’s testimony for the trial judge who refused to believe Mildred Wilson’s denial that she had been drinking.
The liability of the lessor in Louisiana for personal injuries to the tenant or third persons caused by the defective conditions of the -premises is set forth in the case of Mosher v. Burglass, La.App., 170 So. 416, in which the court states as follows :
“ * * * there is written by law into every contract of lease a warranty that *913 the leased property contains no defects and that the lessee and all other persons lawfully upon the premises may subject any part thereof to any of the uses for which the property is intended. Therefore, as we said in Brown v. Pons [La.App.], 147 So. 560, 561: ‘It follows that, if the rail gave way while it was being used for a purpose for which such rails are customarily used and plaintiff himself was not contributorily negligent in relying upon a manifestly defective rail, then the owner of the premises is liable, because “the lessor warranted the solidity of the balustrade for all legitimate purposes.” ’ Evans v. Hollander, 2 La.App. 409.”
Therefore, the question for our determination is whether plaintiff, Mildred Wilson, at the time of .the accident used the bannister in a normal manner or was negligent in subjecting it to a use for which it was not intended.
The record leaves no doubt that Mrs. Wilson was . an extremely heavy woman, the witnesses estimating her weight between 250 and 300 pounds at the time of the accident. The record further reveals that Mildred Wilson had been a tenant of defendant for ten years prior to her fall from the porch. Both Hearn and a carpenter’s helper (the carpenter being deceased) testified that within six months of the accident there were installed new rear steps, a landing and a railing and it was the opinion of the carpenter’s helper that the railing was in good, solid condition.
It is conceded that the bannister rail parted from the post to which it was attached. Plaintiff did not claim nor did the evidence show that there was any rotting of the wood or rusting of the nails which would have weakened the railing. Plaintiff avers that the railing should have been strong enough to hold her weight even though she was heavier than the average person while defendant urges that she staggered against the railing while in an intoxicated condition and that this was not a legitimate use of the railing.
We are satisfied that defendants have not proved that Mildred Wilson was intoxicated at the time she was injured. While we do not believe her statement that she had not been drinking at all, there is sufficient corroboration by the police officers who investigated the accident that Mildred Wilson was not intoxicated because of her ability to answer their questions relating to the fall. One officer thought she had been drinking a beer or two. The other stated that she had a heavy odor of alcohol on her breath but when asked whether she spoke like a person under the influence of intoxicants, answered that “she spoke as if she was in pain.” Hearn testified that before the accident Mildred Wilson told him,, “I’m getting high,” and Emmett Bouvier, a friend of Hearn’s who was working on the premises at the time, stated that he overheard Mildred Wilson make this statement. Bouvier, however, did not see Mildred Wilson at the time and was unable to state what her condition was prior to the fall. Although he saw her afterwards and helped Hearn cover her with a spread as she lay on the ground, he was not asked whether' or not she appeared then to be intoxicated.
The trial judge’s reasons for judgment in which he stated that Hearn testified that Mildred Wilson “left the rail on which she had been leaning and then fell, or staggered back, hitting the rail, causing it to break, and fell out into the yard,” reflect his belief that Hearn actually saw Mildred Wilson stagger against the railing causing it to part from its support. It is our appreciation of Hearn’s testimony that after he saw Mildred Wilson start to walk away from the bannister, he did not observe her movements again until she hollered as she began to fall. Both on direct and cross-examination he declared that “she hollered and I looked up.” He could not have seen her hit the bannister rail if he had to look up after she hollered since he was standing *914 in the yard below at the time she fell from the second story. There were no other witnesses who claimed to have seen the accident.
Defendants submitted testimony to the effect that the porch and railing had been rebuilt approximately six months prior to the accident and that new materials were used in the construction. It is their contention that plaintiffs did not prove that a vice in the construction caused the injuries. The court, in Evans v. Hollander, 2 La.App. 409, when confronted with this same situation, stated the following:
“If the balustrade fell while being used in the manner intended by its erection it was of no importance, what the evidence would have shown as to its condition unknown to the lessee. The lessor warranted the solidity of the balustrade for all legitimate purposes.
“If it fell it was a presumption, juris et de jure, that the balustrade was not such a one as the law required the lessor to furnish his lessee under Articles C.C. 2692-2693, 1695.”
Defendants deny that the bannister was used by Mildred Wilson at the time she fell in the manner intended by its erection, claiming she staggered and fell against it, her great weight causing it' to give way. In Mosher v. Burglass, La.App., 170 So. 416, defendant claimed that plaintiff had fallen against “the adjacent rail with such force that the said rail gave way, it not being designed to withstand so unusual a force.” The court disposed of this contention as follows:
“ * * * It is to be presumed or expected that persons may stumble or fall against such a rail, and that is all that Mrs. Mosher did, even if defendant’s contention is correct. If such a ' rail cannot withstand the pressure of a person stumbling or falling against it, it cannot serve the purpose for which it is intended.”
See also Evans v. Hollander, 2 La.App. 409, in which the court states:
“ * * * The defendant contends that the plaintiff weighs 190 pounds and that it was negligence on his part to throw his weight against the balustrade. There are others who weigh as much. A balustrade is made to lean against and it is not improper for even a very heavy man to use it for that purpose.
“The defendant argues with much energy that the plaintiff rushed against it. The evidence is the other way. But even had he rushed, it was not negligence on his part so to do.”
There is no credible evidence in the record indicating that plaintiff Mildred Wilson either staggered into, fell against or deliberately propelled her body into the bannister rail. No one, not even defendant saw the accident.
Defendants belabor the point that Mildred Wilson was a corpulent woman and insist that because of her weight she should not have expected the bannister to support her should she stagger against it. Mildred Wilson was not a stranger to defendants so that they should not have had to anticipate constructing a bannister to protect someone her size from falling into the yard. Her above average weight was well known to them. She had lived in the same apartment since 1943 and had been their tenant since 1947 when they purchased the building. At the time they rebuilt the porch and railing six months before the accident on January 26, 1957, they knew that it should be strong enough to protect Mildred Wilson from injury when she used the rail for the purpose for which it was intended. This is not analogous to the case of Brown v. Pons, La.App., 147 So. 560, in which the court held that plaintiff had by throwing water over the rail subjected it to a pressure which might not be reasonably expected to be exerted against it. The court based plaintiff’s negligence:
“ * * * on the fact that, in throw- . ing the water over the balustrade, *915 plaintiff, not only leaned his body against the top rail, but, with the tub in his hands, reached ‘as far as you could put your hands out’ and then attempted to pitch the water so that it could reach a drain in the ground nearly forty feet away from the base of the building. He himself weighed 174 pounds and the tub and contents added more than 30 pounds. We feel, as did the district judge, that although the rail was strong enough to keep him from falling so long as he merely leaned against it, it was not contemplated that it was to be subjected to the sudden strain which was placed against it when, added to his own weight, he suddenly swung the tub of water with a sidewise motion of sufficient force to catapult the water through the air a horizontal distance of some thirty or more feet, while falling a vertical distance of only 19 feet.”
Notwithstanding the fact that there is no duty on the owner of a building to provide any particular type of construction, the rail, or stair or floor which is complained of must not provide a trap or be dangerous to the person using it for the purpose intended. Guidry v. Hamlin, La. App., 188 So. 662. One of the legitimate purposes of a railing is to protect persons who stumble or fall against it. Mosher v. Burglass, La.App., 170 So. 416. The bannister which gave way under Mildred Wilson’s weight was to all appearances solidly constructed and thus constituted a trap since it did not in fact prevent her from falling into the yard. Her excessive weight does not relieve defendants of liability inasmuch as they knew that her weight was above average and Mildred Wilson did not exert any pressure against the bannister other than her own weight.
In view of our conclusion that the use Mildred Wilson made of the bannister was in keeping with a purpose for which it was intended, defendants are liable for her damages suffered as a result of her fall.
Mildred Wilson was hospitalized for five days following the accident according to the Charity Hospital records which plaintiffs placed in evidence. According to these records the X-rays taken on the date of the accident revealed that she had fractures of the 2d, 3d, 4th, Sth and 6th ribs which caused pain in her right chest upon respiration. The X-rays taken at Charity Hospital again on January 29, 1957, two days after the accident affirmed the rib fractures. Mildred Wilson was discharged from the hospital on January 31, 1957, and returned for a check-up on February 14, 1957, at which time she complained of pain in her right chest. On March 14, 1957, X-rays still showed the fractures. The March 21, 1957 report showed that the patient was still complaining of pain and on April 4, 1957, she was complaining of slight pain. A report dated August 5, 1957, showed that the fractures had healed. Plaintiffs also introduced a statement from Charity Hospital showing charges in the amount of $128.94 for medical service from January 26, 1957, to August 8, 1957. There is no other medical evidence in the record. Mildred Wilson testified that she was still having pain in her right side at the time of the trial but admitted that she had received no medical treatment since she was finally discharged from Charity Hospital on August 8,1957, and was not under a physician’s care at the time of the trial.
On the basis of the medical evidence in the record, we believe an award of $2,000.00 to plaintiff Mildred Copeland Wilson for her pain and suffering is adequate. Vidrine v. Southern Farm Bureau Casualty Ins. Co., La.App., 105 So.2d 279. Plaintiff William M. Wilson incurred medical expenses for his wife in the amount of $128.94 which he is entitled to recover.
For the reasons assigned the judgment appealed from is reversed and it is ordered, adjudged and decreed that there be *916 judgment in favor of Mildred Copeland Wilson in the amount of $2,000.00 and William M. Wilson in the amount of $128.94 against defendants Jack L. Hearn and Maggie West Hearn, jointly and in solido together with legal interest thereon from .date of judicial demand until paid and all ■costs.
Reversed and rendered.